BYRNES, Judge.
The trial court’s ruling that granted the defendant Rondell McGee’s motion to suppress evidence on August 27, 1999, is reversed, and the case is remanded.

FACTS:

On May 20, 1999, police officers on patrol turned onto Broadway off of Earhart Boulevard. They saw a man and a woman standing in the middle of the intersection of Broadway and Fig Street, approximately one and a half blocks ahead of them. The area was known for narcotics activity, and one officer testified he had made numerous narcotics arrests at that corner. The man and woman noticed the officers approaching, exchanged objects, and then walked from the scene in different directions. The officers stopped the pair, and while one officer conducted a limited frisk of the woman, the other frisked the man, later identified as the defendant Ron-dell McGee. The frisk yielded no weapons. At some point during the frisk the officers saw McGee take his left hand off of the police car and place it into his pocket. The ^officers grabbed McGee’s hand, opened it, and discovered one clear plastic bag containing one rock of what was later determined to be cocaine. One officer testified he and his partner initially decided to stop McGee and his companion because they were standing in the street, even though there was a sidewalk nearby. However, the officers did not issue either suspect a citation for this municipal violation.
The State argues the seizure of cocaine in this case was lawful because the officers had reasonable suspicion to stop McGee and his companion. The State claims that the frisk was justified because McGee made a move toward his pocket.
In State v. Huntley, 97-0965, p. 3 (La.3/13/98); 708 So.2d 1048, 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police “ ‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an “ ‘inchoate and unparticularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “ ‘some minimal level of objective justification. ...’” Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the “totality of the circumstances — the whole picture,” giving deference to the inferences and deductions of a trained officer “that might well | aelude an untrained person.” Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police ‘not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.’ Id.” [Emphasis added.]
*932 In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: “the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action,” citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need “articulable facts” taking into account the entire picture.
In the present case, the officers were on routine patrol when they observed McGee and his companion standing in the middle of the intersection in an area known for drug activity. One officer testified he had made numerous prior drug arrests at that corner. As the officers approached, they saw McGee and his companion exchange objects and then walk away in different directions. Given the character of the area and these actions, the officers had reasonable suspicion of criminal activity to support their investigatory stop of the suspects.
The cocaine was found in McGee’s hand when one of the officers frisked him. McGee attempted to place his hand in his pocket after removing it from the police car where he had placed it during the frisk. Thus, the frisk had already begun by the time McGee attempted to place his hand in his |4pocket. Thus, this court must determine if the officers were justified in frisking McGee prior to his attempt to place his hand in his pocket.
La.C.Cr.P. art. 215.1, subd. B provides for a limited frisk for weapons during an investigatory stop:
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
“The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” State v. Smith, 94-1502, p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In State v. Bridges, 610 So.2d 827 (La.App. 4 Cir.1992), officers stopped and frisked a suspect who matched a description of “a suspicious person possibly selling narcotics.” The officers decided to frisk the suspect “because the area was known for a high amount of sales and use of narcotics and drug dealers were known to carry weapons.” Although the defendant was not engaged in any kind of suspicious activity when the police arrived at the scene and the description of the suspicious person given by the dispatcher was not very detailed, the defendant was wearing a yellow shirt and was where the dispatcher stated that the suspicious person wearing the yellow shirt would be. Additionally, that person was said to be possibly selling drugs, and the area |swas known for its high incidence of narcotics trafficking. Considering the totality of the circumstances, the police had reasonable suspicion to make an investigatory stop of the defendant. When the suspect refused to unclench his hand, the officers forced it open and found contraband. This court found that the officers’ frisk and retrieval of the contraband was proper because one officer testified that he believed that the suspect “could have had a weapon, such as a pocketknife, in his hand.”
In State v. Parker, 94-0624 (La.App. 4 Cir. 11/18/94), 645 So.2d 1309, writ denied, 94-3042 (La.9/15/95), 660 So.2d 446, a pe *933 destrian flagged down two police officers. The pedestrian said someone was selling drugs on a nearby street corner. The subject was described as a black male riding a bicycle and wearing a white T-shirt and purple pants with the letters “LSU” on the side. The officers went to the corner and found the defendant meeting the citizen’s description. When they called him over, he approached them with a clenched fist. They asked him to open his fist and found that he was carrying a plastic bag of rocks that later proved to be crack cocaine. The officer testified that this street corner was in a high-drug-trafficking area. This court stated:
Having legitimately stopped the defendant whom they were just told moments before was selling drugs they saw that his fist is clenched. Common sense dictated that he was holding the merchandise he was selling in the clenched fist. Defendant had no expectation of privacy in his clenched fist under these circumstances. In addition since the clenched fist in all probability held drugs the situation was analogous to the drugs being in the plain view of the officers.
To suppress this evidence would make a mockery of law and order. The defendant was caught red-handed. Constitutional protection against unreasonable search and seizure should not Rbe construed to create a technicality for the acquittal of the defendant under these circumstances.
Id. at 1310.
In the present case, the officers testified they decided to frisk the defendant for their safety, with one officer elaborating that his partner decided to conduct the frisk “because a lot of times you have — when you have narcotics — I mean when you are dealing with narcotics there are a lot of times weapons involved. So he wanted to pat him down to make sure that he wasn’t armed or anything like that.” The officers properly frisked McGee for safety reasons. At some point during the frisk, McGee tried to put his hand into his pocket. The officer conducting the frisk grabbed his hand, opened it, and found the cocaine in his palm. The officer testified he grabbed McGee’s hand because he was concerned McGee might be trying to grab a weapon. This action was warranted, considering that the officers saw McGee and his companion exchanging objects in the middle of the street in an area known for drug trafficking, and McGee made a movement with his hand toward his pocket. The officer had reason to believe that McGee had a weapon in his hand after reaching into his pocket. There was no invasion of the defendant’s privacy beyond that authorized for the search of a weapon or contraband. The evidence was properly seized.
Accordingly, we reverse the trial court’s ruling that granted McGee’s motion to suppress the evidence. McGee’s motion to suppress is denied, and the case is remanded for further proceedings.

WRIT GRANTED; REVERSED & REMANDED.

BAGNERIS, J., DISSENTS WITH REASONS.