763 So.2d 21 (2000)
STATE of Louisiana
v.
Fairada F. DORSEY.
No. 99-KA-1819.
Court of Appeal of Louisiana, Fourth Circuit.
April 19, 2000.
*22 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana, Counsel For Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel For Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY).
KIRBY, Judge.

STATEMENT OF THE CASE
Defendant Fairada F. Dorsey was charged by bill of information on August 28, 1998 with possession of cocaine, a violation of La. R.S. 40:967(C). Defendant pleaded not guilty at his September 2, 1998 arraignment. The trial court found *23 probable cause and denied defendant's motion to suppress the evidence on September 9, 1998. Defendant was found guilty as charged on September 16, 1998, following trial by a six-person jury. On November 16, 1998, the trial court sentenced defendant to five years at hard labor. After the State filed a habitual offender bill of information, defendant admitted that he was the same person previously convicted; the trial court adjudicated defendant a second-felony habitual offender, vacated the original sentence, and again sentenced him to five years at hard labor, with credit for time served. The court filed a motion to reconsider sentence on defendant's behalf, apparently holding its ruling in abeyance pending defendant's participation in the Orleans Parish Sheriff's "About Face" program. The trial court granted defendant's motion for appeal.

FACTS
New Orleans Police Department Criminalist Karen Lewis Holmes was qualified by stipulation as an expert in the testing and identification of controlled dangerous substances. She identified as evidence some rock-like substances under a particular item number, and stated that they tested positive for the presence of cocaine.
New Orleans Police Officer Patrick Joseph testified that on July 30, 1998 he participated in the surveillance of an individual suspected of selling drugs at 1323 St. Philip Street. Officer Joseph observed defendant and another individual in a vehicle stop and park just past 1323 St. Philip Street. Defendant exited the vehicle, while the passenger remained inside. Defendant spoke with the suspected seller, who was standing on the sidewalk a few feet from the car. Shortly thereafter, the suspected seller went down an alley of 1323 St. Philip Street, returning a few seconds later. Defendant handed the seller what the officer believed was currency, and the seller handed defendant something small. Defendant got back into his vehicle and drove off. Officer Joseph radioed a description to support units, and defendant was apprehended. Officer Joseph said he later confirmed defendant's identity as the person he had seen engage in the transaction with the suspected drug seller. On cross examination, Officer Joseph admitted that he could not tell what the seller had handed to defendant because it was too small. He said that officers had made two or three arrests of buyers prior to defendant, and that the seller had made many sales, but that officers were not able to arrest all of the buyers because of limited manpower.
New Orleans Police Officer William Ceravolo testified that police became involved in the investigation after receiving information from a confidential informant about illegal narcotics trafficking in the 1300 block of St. Philip Street. He participated in the arrest of defendant on July 30, 1998, after Officer Joseph radioed him defendant's description and alerted him to the direction in which defendant was traveling. Officer Ceravolo said defendant was stopped within three to five minutes at the intersection of Esplanade Avenue and North Galvez Street. He ordered defendant out of the vehicle, placed him under arrest for possession of a controlled dangerous substance, and searched him, finding a clear piece of plastic containing two rock-like substances. He said he also arrested defendant's passenger, a Mr. Felton. Officer Ceravolo stated on cross examination that he was not effecting a stop of defendant, but an arrest. He stated that the surveillance had been going on for several hours, and that officers had made several arrests of subjects who had purchased from the same suspected seller with whom defendant had dealt. He further elaborated, stating that he and other officers had made one prior arrest, and between the time of that arrest and defendant's arrest the seller was observed continuing to engage in what appeared to be other sales. He said paperwork was being done on the earlier arrest during this time, and no officers had been available to stop and arrest the other buyers. He said he was familiar with the location where Officer *24 Joseph had been positioned during his surveillance, and said Officer Joseph had a clear and unobstructed view of the 1300 block of St. Philip Street.
Tony Felton testified that he had a prior conviction for forgery, and had known defendant for nine months. He said he and defendant went to Victoria Dorsey's residence, and to City Hall to pick up some immunization papers. The papers were not ready, so they went to a Walgreen's drugstore, located at Elysian Fields Avenue and Rampart Street, before heading back to City Hall. Defendant turned off on St. Philip Street because traffic on Elysian Fields was bad, and pulled over to talk to a young female for about two or three minutes. He said that after they left St. Philip Street, police stopped them on Esplanade Avenue and Galvez Street.
Victoria Dorsey, defendant's grandmother, testified that defendant came to her home at 1331 Port Street at approximately one o'clock in the afternoon on July 30th. She said there is a Walgreen's drugstore eight or nine blocks from her home, and that defendant and Mr. Felton were going to that area.
Sabrina Elliot testified that she had known defendant, through his grandmother, for a "couple of days." She claimed that she was walking down the street on July 30th, when she saw defendant passing in a car and flagged him down. Ms. Elliot said defendant got out of the car; she asked him how his grandmother was doing; defendant replied that she was doing fine; and then he got back into the car and pulled off. She said she was in the area of 1323 St. Philip Street to visit her aunt. She acknowledged that there is an apartment building in the 1300 block of St. Philip Street, but denied knowing anyone named Glen Washington, or having seen a male individual out in front of the apartment building that day.

ERRORS PATENT
A review of the record for errors patent on the face of the record reveals none.

ASSIGNMENT OF ERROR
By his sole assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence.
On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-4. "In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case." State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
A search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tomasetti, 381 So.2d 420, 423 (La.1980). One of those exceptions is a search of a person and the area within his immediate control incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Tomasetti, 381 So.2d at 423. La.C.Cr.P. art. 201 defines arrest as "the taking of one person into custody by another ... [by] actual restraint of the person." The distinguishing factor between an arrest and the lesser intrusive investigatory stop is that in the former, a reasonable person would not feel that he is free to leave, while in the latter, a reasonable person would feel free to leave after identifying himself and accounting for his suspicious actions-"it is the circumstances *25 indicating intent to effect an extended restraint on the liberty of the accused" that is determinative of when an arrest occurs. State v. Allen, 95-1754, p. 6 (La.9/5/96), 682 So.2d 713, 719.
A warrantless arrest must be based on probable cause. State v. Jackson, 450 So.2d 621, 627 (La.1984); State v. Creecy, 98-1472, p. 6 (La.App. 4 Cir. 7/14/99), 742 So.2d 615, 619. Probable cause exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Johnson, 98-2544, p. 6 (La.App. 4 Cir. 11/17/99), 748 So.2d 527, 531; State v. Bryant, 98-1115, p. 5 (La.App. 4 Cir. 8/4/99), 744 So.2d 108, 111. Probable cause is assessed by an objective standard that must withstand the "detached, neutral scrutiny of a judge." State v. Fisher, 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184 (quoting State v. Flowers, 441 So.2d 707, 712 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984)). In determining whether probable cause existed, the court should take into account the "practical considerations of everyday life on which ... average police officers can be expected to act." Id. (quoting State v. Raheem, 464 So.2d 293, 296 (La.1985)). The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction; probable cause, as the very name implies, deals with probabilities. State v. Green, 98-1021 (La.App. 4 Cir. 12/22/99), 750 So.2d 343. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands. Id.
In the instant case, there can be no doubt that the officers intended to arrest defendant when he was stopped. Officer Joseph testified that he was observing the suspected seller in front of 1323 St. Philip Street as part of a continuing investigation. He observed defendant get out of his car, approach this individual, give him currency, and receive something in exchange. He said police had already made two or three arrests arising from transactions with the same seller prior to arresting defendant and his passenger. Officer Joseph testified that he did not view the activity as suspicious, but as establishing probable cause to arrest. Officer Ceravolo testified that Officer Joseph relayed the information about the buy to him, and he stopped defendant based on that information, placed him under arrest, searched him incidental to that arrest, and recovered a plastic bag containing crack cocaine from defendant's right front pants pocket. When asked whether he stopped the car and made a pat down search, Officer Ceravolo said he was effecting an arrest, not making a stop. Not only did the arresting police officer, Officer Ceravolo, testify that he was arresting defendant, the facts support no other conclusion- defendant clearly was not free to leave. The officers had information from an unnamed confidential informant that someone was selling drugs at the location, and one officer observed what he believed was a drug sale from the seller to defendant. The officers were ready to make an arrest, and did so. The dispositive issue is whether the officers had probable cause to arrest.
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), cited by the State, police officers received information from a "reliable informant" that heroin was being sold from a residence. Officers on surveillance observed a number of vehicles and individuals approach the residence and apparently leave without engaging in narcotics transactions. The next day the informant advised officers that the sellers had run out of heroin, but would have a fresh supply the following day. The following day, officers observed an automobile stop at the residence, whereupon a person exited the residence and exchanged objects with a *26 passenger sitting inside of the vehicle. Officers subsequently stopped the car, and patted down defendant, finding a medicine bottle containing heroin. This court found that the officers had effected an arrest, and had sufficient probable cause to make that arrest based on the information from the confidential informant, the activities observed by the officers, and the observation of what "clearly appeared to be a drug transaction before defendant and his companion left in the car." 586 So.2d at 629.
In State v. Cook, 99-0091 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, officers received information through a narcotics hotline that drugs were being sold from an apartment. An officer testified that he observed a person exit the apartment building, and later make a hand-to-hand transaction with another individual. The same officer testified that he later observed a second individual exit the apartment building and make a hand-to-hand transaction with another person. Both of the individuals who had exited the apartment were subsequently stopped by police, but no contraband was found on either of them. When officers observed defendant exit the apartment during the thirty to forty-five minute surveillance, they decided to stop him. When he saw the officers, he ran back inside of the apartment. This court held that, based on the information officers had received, and their own observations, they had reasonable suspicion to stop defendant after he exited the apartment. This court further held that this reasonable suspicion ripened into probable cause to arrest when defendant turned and fled at the sight of the officers. 99-0091 at pp. 11-12, 733 So.2d at 1234.
In the instant case, Officer Ceravolo testified at the motion to suppress hearing that he arrested defendant based on the observations of Officer Joseph, the officers' experience in doing their surveillance, and the prior arrest from that day. He also stated that he had made numerous arrests in that area in his short time in the police district. While Officer Ceravolo did not specifically mention at the hearing that a factor justifying the arrest was the officers' receipt of information from a confidential informant that drugs were being sold at the location, that is a factor to be considered when assessing the existence of probable cause. State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) ("the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," quoting Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978)); See also State v. McGee, 99-2193 (La.App. 4 Cir. 12/1/99), 752 So.2d 930, 931; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 776.
The import of the testimony by Officers Joseph and Ceravolo is that they had received information from a confidential informant that drugs were being sold in front of 1323 St. Philip Street. Officer Joseph observed at least one sale by the seller, after which officers arrested the buyer, who was presumably in possession of narcotics. Officer Joseph then observed defendant drive up, exit his car, and approach the seller. The seller spoke with defendant, turned and went down an alley, came back, took what appeared to be currency from defendant, and gave something small to defendant. Officer Joseph was justified in concluding that defendant, like the other buyer, had just purchased narcotics from the seller. Officer Joseph had facts and circumstances within his knowledge sufficient to justify a man of ordinary caution in believing that defendant had committed a crime-the purchasing of narcotics. Officer Joseph communicated this information to Officer Ceravolo, who properly stopped and arrested defendant based on probable cause. The trial court properly *27 denied defendant's motion to suppress the evidence.
There is no merit to this assignment of error.
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.