931 So.2d 286 (2006)
STATE of Louisiana
v.
Danny Ray SHERMAN.
No. 2005-K-0779.
Supreme Court of Louisiana.
April 4, 2006.
Rehearing Denied June 30, 2006.
*287 Charles C. Foti, Jr., Attorney General, James C. Downs, District Attorney, Robert W. Levy, Loren M. Lampert, Assistant District Attorneys, for applicant.
Glenn G. Cortello, Alexandria, Attlah D. Burrell, for respondent.
*288 KNOLL, Justice.
This criminal case concerns the reasonableness, vel non, of a warrantless search where probable cause to arrest existed, but the officers had no intent to arrest for the offense for which probable cause existed. After a hearing on defendant's motion to suppress, the trial court denied the motion, finding there was probable cause to arrest the defendant for obstructing a public passage and for operating a motor vehicle without a driver's license, and the search was valid as one incidental to arrest. The court of appeal reversed his conviction, holding, inter alia, that there was no probable cause to arrest the defendant for either of these violations and any evidence found subject to a search based on the fact that the defendant did not possess a valid driver's license should have been suppressed. For the following reasons we reverse the court of appeal, finding that when defendant stated he did not have a driver's license the officers acquired probable cause to make a custodial arrest for that traffic violation. We hold the warrantless search of the defendant fell within the well established exception for a search incidental to arrest even though the defendant was not arrested for the offense for which probable cause existed.

FACTS AND PROCEDURAL HISTORY
On November 13, 2002, Alexandria Police Department Detective Alton Horn, Officer Lane Windham, Sergeant Newmon Bobb and a U.S. Marshall, pursuant to complaints about drug dealing in the area, launched a narcotics interdiction patrol on Lincoln Road in Alexandria. As the officers turned onto Lincoln Road, they observed the defendant standing in the opposite lane of travel adjacent to his motorcycle which was parked, at least partially, on the unimproved gravel shoulder no more than 18 inches wide. The defendant was talking on his cell phone. Whether the defendant and/or his motorcycle was obstructing the lane of travel was disputed at the hearing on defendant's motion to suppress.
Detectives Horn and Windham exited their vehicle, approached the defendant and asked what he was doing. Defendant told them his motorcycle had run out of gas. Detective Horn asked defendant if he had a driver's license and defendant said he did not. Detective Horn then searched the defendant. Detective Horn reached inside the defendant's pocket and removed a ten dollar bill and a bag containing several rocks of crack cocaine. The officers immediately arrested the defendant for possession of a Schedule II controlled dangerous substance with intent to distribute.
The State charged the defendant with possession of a Schedule II controlled dangerous substance with intent to distribute in violation of La.Rev.Stat. 40:967. The defendant moved to suppress the evidence, contending he was subjected to a Terry stop and the subsequent search of his pocket exceeded an authorized search for weapons. The State countered the search of the defendant's pocket was authorized as a search incident to warrantless arrest, because there was probable cause to arrest the defendant for his failure to have a valid driver's license and for obstructing the roadway in violation of La.Rev.Stat. 14:100.1.
At the hearing on the motion to suppress, Detective Horn testified that he observed the defendant standing in the middle of the street impeding the normal flow of traffic. He further testified the defendant's motorcycle was not parked directly in the roadway but on the road, in between the street and the unimproved gravel shoulder. In response to questioning by *289 Detective Horn, the defendant explained that he had been riding his motorcycle and it had run out of gas. When Detective Horn asked the defendant if he had a driver's license, the defendant answered no. When asked on cross-examination whether the defendant said he did not have a driver's license or rather that he did not have his driver's license on his person, Detective Horn testified the defendant stated he did not have one. The police officers made no attempt to determine whether the defendant had been issued a valid driver's license.
Narcotics investigator Officer Lane Windham testified he saw the defendant standing in the roadway and that an automobile traveling in the normal lane of traffic would have to either stop or go around him in order to proceed in that direction. He did not recall any vehicles being on the road as the officers approached the defendant in their vehicle. Officer Windham stated that although the defendant was not obstructing his lane of travel, the defendant was obstructing the other lane of travel.
Detective Newmon Bobb was the head detective in the vehicle. At the hearing he testified that the defendant was standing in the road by a motorcycle parked on the street and that a vehicle traveling north would have had to go in the opposite lane of travel to get around the defendant. He further testified that the gravel shoulder was a very narrow one and in order to stand beside the motorcycle one would have to be either in the road or in the ditch.
Ms. Wanda Reed and Ms. Frances Price also testified at the hearing. The incident and arrest occurred in front of Ms. Reed's home at 5009 Lincoln Road. The defendant had initially knocked on Ms. Reed's door, inquiring if Richard was there. When told Richard was not there, the defendant asked if Ms. Reed had a gas can. She told him she did not and the defendant then walked away. Ms. Reed testified the motorcycle was completely off the road and that the defendant was not standing in the street. However, Ms. Reed observed the motorcycle from her doorway; she did not go out to the street. After her short conversation with the defendant she turned around and went back inside. She did not go back to her doorway until her nephew told her the police were outside; she did not know where the defendant was standing after she returned inside.
Ms. Price was visiting her sister, Wanda Reed, at Ms. Reed's home that day. Ms. Price went with her sister to the door when the defendant knocked. Ms. Price lingered at the door for a few seconds after her sister went back inside. She testified that neither the defendant nor his motorcycle was obstructing the roadway. However, she also could not say where the defendant was standing after she returned inside.
The trial court denied the motion to suppress, finding that there was probable cause to arrest the defendant for obstructing a public street and for operating a motor vehicle without a driver's license. The trial court did express that it wished the officers had checked to see if defendant had a driver's license, just not on his person at the time, and checked to see if there was gasoline in the motorcycle. However, the district court judge acknowledged that although the officers did not do what he would have done, that does not mean the stop was invalid.
Subsequently a jury trial was held and the defendant was convicted of possession of a Schedule II controlled dangerous substance with intent to distribute. The defendant appealed his conviction, contending the trial court erred in denying his *290 motion to suppress. The court of appeal panel, in a split decision, found the trial court erred in denying the motion to suppress and vacated the defendant's conviction and sentence.
The court of appeal, reviewing the trial court's ruling on the motion to suppress, reviewed the testimony associated with the motion to suppress and the trial testimony. The panel first considered whether the contraband was discovered pursuant to a permissible frisk of the outer clothing, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or the plain feel exception, Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), and held these exceptions did not apply. The panel then considered the State's argument the search was incident to arrest and that there was probable cause to arrest for obstruction of public passage and driving without a license.
The majority held there was no probable cause to arrest the defendant for violation of La.Rev.Stat. 14:100.1, obstruction of public passage. The majority noted the testimony of the officers was unclear as to where the defendant was standing when they first saw him. The majority further found it clear the defendant was not obstructing the traffic lane the officers were in; that at some later time the officers began to focus on where the motorcycle was parked; that none of the officers could say exactly where the motorcycle was parked in relation to the obstruction allegation, because they placed the motorcycle in different places at the hearing and the trial; and the officers could not agree on where the defendant was standing when they first saw him. According to the panel majority, the testimony of the police officers did not meet the burden required of an objectively reasonable basis for stopping the defendant for obstructing the roadway.
Lastly, the panel considered the issue of whether the officer could arrest the defendant for failing to produce a driver's license. The majority reviewed the facts in light of La.Rev.Stat. 32:411.1 C(1) and (2) and La.Code Crim. Pro. art. 211.4, and held the officers failed to follow the proper procedure to affect a valid arrest under these statutes, because they made no attempt to determine whether the defendant had been issued a valid license which was not under revocation, suspension or cancellation. It held a custodial arrest under La.Rev.Stat. 32:411.1 C[1] and La.Code Crim. Pro. art. 211.4 A[2] is statutorily prohibited *291 if the officer fails to make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license which is neither under revocation, suspension or cancellation. We granted the State's writ application, State v. Sherman, 05-0779 (La.11/29/05), 916 So.2d 151, and for the following reasons, reverse the court of appeal.

DISCUSSION
The first issue before us is whether probable cause to arrest the defendant existed. We find the court of appeal erred by its determination that probable cause to arrest for operating a motor vehicle without a driver's license was governed by La. Rev.Stat. 32:411.1 C and La.Code Crim. Pro. art. 211.4. The issue was not whether the defendant could be arrested for driving without a valid driver's license on his person. Rather, the issue was whether the officers had probable cause to arrest the defendant for driving without having been issued a license, in violation of La.Rev.Stat. 32:402.
The officers did not need either reasonable suspicion for an investigatory stop or probable cause for an arrest to approach the defendant, inquire why he was parked at the side of the road, and ask for some identification. Mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1183, (citing United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992)). An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); State v. Lewis, XXXX-XXXX, p. 3 (La.4/26/02), 815 So.2d 818, 820, cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002). In response to Officer Horn's question, the defendant stated he did not have a driver's license. He did not declare that he had a license but not on his person at the time. When the defendant stated he did not have a driver's license, the officers acquired probable cause to make a custodial arrest for that traffic violation. Louisiana law declares it unlawful for any person to drive a motor vehicle on any public street unless he has a driver's license. See La.Rev.Stat. 32:402 B(1). Our law requires that an operator of a motorcycle possess a valid driver's license with a special motorcycle endorsement. See La.Rev.Stat. 32:408 C. The court of appeal's reliance on La.Rev. Stat. 32:411.1 C and La.Code Crim. Pro. art. 211.4 is misplaced, because those statutes clearly address situations in which the officer has "reasonable grounds to believe a person has committed an offense of driving without a valid driver's license in his possession." The officers had no duty to determine whether the defendant had a valid driver's license when he told them he did not have one. Therefore the officers had probable cause to arrest the defendant for the offense of driving without a license.[3]
*292 The more pertinent issue before us is whether the warrantless search of the defendant fell within the exception for a search incident to arrest, where the defendant was not arrested for the offense for which probable cause existed. It is well established that a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition of warrantless searches. United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); State v. Breaux, 329 So.2d 696, 699 (La.1976). It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. Sibron v. New York, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968). Where probable cause does not exist until after the search, the search cannot be justified as incident to a lawful arrest. Id. at 62-63, 88 S.Ct. at 1902-1903.
However, when probable cause to arrest does exist and "the formal arrest followed quickly on the heels of the challenged search of petitioner's person," the United States Supreme Court has not found it "particularly important that the search preceded the arrest rather than vice versa." Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Naturally, the fruits of the search cannot be necessary to support the probable cause to arrest. Id. at 111 n. 6, 100 S.Ct. 2556. If an arrest is justified before the search, it is not unreasonable for the search to be made before instead of after the arrest. State v. Melton, 412 So.2d 1065, 1068 (La.1982). It is well established searches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search.[4]
The search-before-arrest cases generally assume that a "substantially contemporaneous" arrest is essential, and thus cannot be readily extended to encompass the situation in which no arrest occurs. 3 Wayne R. LaFave, Search and Seizure  A Treatise on the Fourth Amendment, § 5.4(b) (4th ed.2004). In the matter before us, the arrest was substantially contemporaneous with the search. However, the arrest was not for the offense for which probable cause existed. We are confronted with determining whether the warrantless search of the defendant fell within the well established exception for searches incidental to arrest, where the officers had no intent to arrest for the traffic offense.
The United States Supreme Court has considered the question of whether a warrantless search violates the Fourth Amendment where probable cause exists, but the arrest is not substantially contemporaneous *293 with the search. Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). Murphy voluntarily appeared, with counsel, at the police station for questioning concerning the strangulation of his estranged wife. The police noticed a dark spot on Murphy's finger, which they suspected might be dried blood. Knowing that evidence of strangulation is often found under the assailant's fingernails, the police asked Murphy if they could take a sample of scrapings from his fingernails. He refused, and the police proceeded to take the samples, which turned out to contain traces of skin and blood cells and fabric from the victim's nightgown. Murphy was not formally arrested until approximately one month later, even though the police had probable cause to arrest him at the time they detained him and scraped his fingernails.
Murphy unsuccessfully appealed his conviction, claiming that the fingernail scrapings were the product of an unconstitutional search. He then commenced an action for federal habeas corpus relief. The district court denied the petition, but the Court of Appeals for the Ninth Circuit reversed. The Court of Appeals assumed the presence of probable cause to search or arrest, but held that in the absence of an arrest or other exigent circumstances the search was unconstitutional. The Supreme Court reversed, finding the search was constitutionally permissible under the principles of an exception to the warrant requirement when a search is incident to a valid arrest. Cupp, 412 U.S. at 295, 93 S.Ct. at 2003. The Court explicitly held that a full Chimel[5] search would not have been justified in this case without a formal arrest and without a warrant. Cupp, 412 U.S. at 296, 93 S.Ct. at 2004. Noting that at the time Murphy was being detained at the station house, he was sufficiently apprised of his suspected role in the crime to motivate him to attempt to destroy what evidence he could, the rational of Chimel justified the police in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails. Id.
Although Cupp might well be read as establishing only a narrow proposition that (i) if there is probable cause for arrest but no formal arrest, and (ii) if the suspect is reasonably believed to be in the actual process of destroying highly evanescent evidence, then (iii) that evidence may be preserved by a very limited search as compared to a full search of the person, Professor LaFave theorizes Cupp justifies a considerably broader rule. LaFave, § 5.4(b) at p. 195. Given the holdings in United States v. Robinson, supra, and United States v. Edwards,[6] the argument that a search should be deemed permissible whenever the greater intrusion of arrest and search would have been lawful has considerable appeal. LaFave, § 5.4(b) at p. 201. Simply stated, if probable cause to arrest plus the making of a custodial arrest justifies a search of the person, then a search should be allowed when there is probable cause to arrest but no arrest. An examination of leading jurisprudence concerning warrantless searches incident to arrest supports this proposed rule.
The justification or reason for the authority to search incident to a lawful arrest rests as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial. Robinson, 414 U.S. at 234, 94 S.Ct. at 476 (citing Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); *294 Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960)). In Robinson, the defendant was arrested for operating a motor vehicle after the revocation of his operator's permit. In searching Robinson incident to the arrest, the officer reached into his pocket and pulled out a cigarette pack. He opened the pack and discovered 14 capsules of heroin. The Court of Appeals reversed the conviction, holding the heroin had been obtained as a result of a search that violated the Fourth Amendment. Because there would be no further evidence of the crime to be obtained in a search of the arrestee, the Court of Appeals held only a search for weapons could be justified. In reversing the Court of Appeals, the United States Supreme Court noted the standards traditionally governing a search incident to a lawful arrest are not commuted to the stricter Terry standards by the absence of probable fruits or further evidence of the particular crime for which the arrest is made. Robinson, 414 U.S. at 234, 94 S.Ct. at 476. Nor was the Court inclined to qualify the breadth of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to possess dangerous weapons than are those arrested for other crimes. Id.
Addressing their more fundamental disagreement with the Court of Appeals's suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search incident to a lawful arrest, the Court declared:
The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a `reasonable' search under that Amendment.

Robinson, 414 U.S. at 235, 94 S.Ct. at 477.
Professor LaFave, noting that Robinson expressly holds a search incidental to custodial arrest is permissible merely by virtue of the fact a lawful custodial arrest was made and probable cause, in the sense that it is probable the search will uncover evidence, is not required, implies this justifies a more expansive reading of Cupp. He finds further support for the premise that Cupp justifies a broader rule by the Court's holding in United States v. Edwards. Lafave, § 5.4(b) at p. 200. In Edwards, the Court upheld the warrantless search; whether the arrestee would dispose of any evidence he was suspected of having in his possession was not a relevant factor, as the search was for minute paint chips in the defendant's clothing which the defendant did not even know were there. Professor LaFave theorizes if probable cause to arrest plus the making of the arrest justifies a search of the person without the necessity of also showing probable cause that there is evidence to be found or that any evidence which is found might otherwise be lost, then why is the same not true when there is probable cause to arrest but no arrest? Lafave, § 5.4(b) at p. 200.
*295 In the case sub judice, the State argued there was probable cause to arrest the defendant for violation of La. Rev.Stat. 32:402 B(1). The State further contended because there was probable cause to arrest the defendant, the warrantless search of his person fell within the exception for a search incident to arrest. The Fourth Amendment permits a warrantless search or seizure incident to a constitutionally valid custodial arrest. Robinson, 414 U.S. at 224-226, 94 S.Ct. at 471-473; Chimel, 395 U.S. at 763, 89 S.Ct. at 2040. Had the police arrested the defendant for his traffic violation, the incident search would have, without question, fallen within the well established exception. We believe Cupp establishes all that is necessary is a finding that an arrest could have occurred in order for the exception to the warrant requirement to apply. See Joseph G. Cook, Constitutional Rights of the Accused § 4:49 (3d ed.1996). Although it is suggested that Cupp might be read far more narrowly and that in the more unusual case of search where probable cause to arrest exists, but no arrest occurs, it is appropriate to apply the warrantless search test, i.e., probable cause that evidence will be found plus exigent circumstances, we find Cupp and United States Supreme Court decisions support a broader rule in this type of situation.
Warrantless searches incidental to arrest are reasonable because when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession. Cupp, 412 U.S. at 295, 93 S.Ct. at 2003; Chimel, 395 U.S. at 762-763, 89 S.Ct. at 2039-2040. The United States Supreme Court has further found a custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; the search incident to that arrest requires no additional justification, such as the need to preserve evidence. Robinson, 414 U.S. at 235, 94 S.Ct. at 477. More importantly, the Supreme Court held it need not be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. Id. A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. Id. Given the fact the lawful custodial arrest alone is sufficient to find a warrantless search of the person reasonable, Robinson, 414 U.S. at 235, 94 S.Ct. at 477, and that the search may precede the actual arrest, Rawlings, 448 U.S. at 111, 100 S.Ct. at 2564, we find where probable cause to arrest exists, a search of the person does not violate the Fourth Amendment or La. Const. art. I, § 5, where the suspect is subject to the greater intrusion of arrest and search.
Nor should the subjective intentions of the officers play any role in our analysis. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). In a unanimous decision, the United States Supreme Court held that when a purportedly pretextual traffic stop has been made where there was probable cause to believe the motorist violated the traffic laws, no Fourth Amendment challenge may be undertaken on the basis the subjective intent of the officers was to use the traffic stop as a means of investigating other law violations. Id., 517 U.S. at 810-813, 116 S.Ct. at 1773-1774. The Court noted it had never held, outside the context of an inventory search or administrative inspection, that an officer's motive invalidates objectively justifiable *296 behavior under the Fourth Amendment; the Court had repeatedly held and asserted the contrary. Id., 517 U.S. at 812, 116 S.Ct. at 1774. Robinson established "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Id., 517 U.S. at 813, 116 S.Ct. at 1774 (quoting Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)). The constitutional reasonableness of a traffic stop does not depend on the actual motivation of the officer. Whren, 517 U.S. at 813, 116 S.Ct. at 1774. Given that the subjective intentions of the officers are not relevant in determining the constitutional reasonableness of traffic stops, we find the subjective intent of the officers does not determine the reasonableness of a warrantless search incidental to arrest, where the officer did not have an intent to arrest for the offense for which probable cause objectively existed.
We find further support in persuasive authority from the United States Eighth Circuit Court of Appeals. In United States v. Pratt, 355 F.3d 1119(8th Cir. 2004), the defendant appealed the district court's denial of his suppression motion. In that case, police officers on routine patrol in a marked vehicle observed the defendant walking in the middle of the street in violation of state and local law. The defendant had been arrested on prior occasions by one of the officers for drug violations, outstanding warrants and traffic violations. Additionally, on previous occasions dispatch had informed the officer that the defendant had been armed during prior encounters with the police. The defendant looked at the officers over his left shoulder twice and then jogged to an adjacent open lot, where he leaned over and appeared to spit something from his mouth. During a previous arrest in that same area, the officer had seen the defendant spit out crack cocaine. The officers decided to do a "pedestrian check" on the defendant because he was violating a municipal ordinance and state law by walking in the street.
Upon their approach, defendant put his hands in his pockets and refused to remove them despite being ordered to do so three times. The officers removed his hands and placed him in handcuffs. An officer patted down the defendant and felt what he believed to be a weapon. He reached into the defendant's pocket and pulled out five rounds of live ammunition. Because the officers knew the defendant to be a felon, he was placed under arrest for possessing ammunition. He was also given a ticket for walking in the street. The defendant moved to suppress the ammunition contending that it was retrieved in violation of the Fourth Amendment because the officer exceeded the proper scope of a protective frisk under Terry v. Ohio, supra.
In affirming the denial of the motion to suppress, the Eighth Circuit first found the proper search standard to apply was that for a search incident to arrest. The officers had probable cause to arrest the defendant before they approached him because they observed him violating state and local law by walking in the street. Pratt, 355 F.3d at 1123. Second, because the officers had probable cause to arrest the defendant, Terry is inapplicable. Id. at 1124. Although the officers testified that they did not believe they had arrested the defendant when they physically restrained him, that fact does not change the outcome; an officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been *297 seized. Id. (citing United States v. Mendenhall, 446 U.S. 544, 554 n. 6, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Because the defendant was arrested, the proper question was whether the subsequent search was reasonable under the Fourth Amendment. The Eighth Circuit held the search was incident to a lawful arrest, which has long been held as reasonable under the Fourth Amendment. Id. More importantly for our purposes, that court stated:
We do not think the fact Pratt was ultimately given a citation for walking in the street impairs our analysis. In Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Court concluded it could not "extend" Robinson to a situation in which a traffic offender had been observed speeding and had been given a citation, because none of the traditional rationales for the Robinson rule were present. Id. at 118-19, 119 S.Ct. 484, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492. In light of the Court's cases cited above, applying the search-incident exception in this case involves no extension of Robinson beyond an arrest. Moreover, we do not read Knowles as foreclosing the search-incident-to-arrest exception where the officer has not yet issued a citation and ultimately does subject the individual to a formal arrest on one of the multiple grounds lawfully established. . . .

Pratt, 355 F.3d at 1124 n. 4.

CONCLUSION
For the foregoing reasons, we find the court of appeal erred in reversing the trial court. The police officers had probable cause to arrest the defendant for the offense of driving without a license when he responded to their questioning by stating he did not have a license. Because there was probable cause to arrest the defendant, the search of his person did not violate the United States Constitution or the Louisiana Constitution. The search, which preceded the arrest, did not serve as part of its justification. Where the police have probable cause to effect a lawful custodial arrest, and conduct a search of that person incident to arrest, the fruits of that search may not be suppressed merely because the police did not intend to arrest the suspect for the offense for which probable cause existed.

DECREE
The judgment of the court of appeal is reversed and the judgment of the trial court is reinstated. This case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
REVERSED.
JOHNSON, J., dissents.
NOTES
[1] La.Rev.Stat. 32:411.1 C provides:

(1) When an officer or agent of the department or any police officer of the state, or any parish or municipality has reasonable grounds to believe a person has committed an offense of driving without a valid driver's license in his possession, the police officer shall make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license. If the police officer determines that the person has been issued a valid driver's license which is neither under revocation, suspension, or cancellation, but that the license is not in his possession, the peace officer shall issue a written summons to the offender in accordance with law, commanding him to appear and answer the charge.
(2) The provisions of this Subsection shall in no way limit the peace officer from issuing a citation for operating a motor vehicle without physical possession of a valid driver's license.
[2] La.Code Crim. Pro. art. 211.4 A provides:

When a peace officer has reasonable grounds to believe a person has committed an offense of driving without a valid driver's license in his possession, the police officer shall make every practical attempt based on identifying information provided by the person to confirm that the person has been issued a valid driver's license. If the police officer determines that the person has been issued a valid driver's license which is neither under revocation, suspension, or cancellation, but that the license is not in his possession, the peace officer shall issue a written summons to the offender in accordance with law, commanding him to appear and answer the charge.
[3] Having determined there was probable cause to arrest the defendant for the offense of driving without a license, we pretermit review of whether or not the trial court erred in finding there was probable cause to arrest the defendant for obstructing a public passage.
[4] United States v. Han, 74 F.3d 537, 541 (4th Cir.1996), cert. denied, 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996) (search of defendant's bag immediately before formal arrest valid because police had probable cause to arrest defendant before search based on informant's description and officers' observation of suspect talking with known drug dealer); United States v. Hernandez, 825 F.2d 846, 852 (5th Cir.1987) (search before formal arrest valid because arrest quickly followed search and probable cause for arrest supplied before search when carnival vendor notified officer that suspect attempted to pass counterfeit bill); United States v. Potter, 895 F.2d 1231, 1234 (9th Cir.1990), cert. denied, 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990) (search before formal arrest valid because probable cause for arrest supplied before search when officer was notified of drug activity, watched defendant remove objects from waistband and place them in bush and found bag of white powder and 3 hypodermic syringes in bush); United States v. Riley, 351 F.3d 1265, 1269 (D.C.Cir.2003) (search before formal arrest valid because police had probable cause to arrest before search when highly reliable confidential informant told police that suspect possessed narcotics), See e.g. Warrantless Searches and Seizures, 34 GEO. L.J. ANN. REV. CRIM. PROC. 37, 60 (2005).
[5] Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
[6] United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).