AMY, J.,
dissenting.
_JjThe majority finds that the trial court erred in denying the defendant’s motion to suppress, thus reversing the defendant’s conviction and sentence. I respectfully dissent, as I find an affirmation is appropriate.
In State v. Herrera, 09-1783, p. 1 (La.12/18/09), 23 So.3d 896, 897, our supreme court stated:
A law enforcement officer may approach any person and ask simple questions without a requirement of reasonable suspicion of criminal activity. State v. Sherman, 05-0779, p. 7 (La.04/04/06), 931 So.2d 286, 291. Mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Id. An officer’s request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); Sherman, 05-0779 at 7, 931 So.2d at 291.
The distinction between a permissible encounter and a seizure was set forth in Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The Court held that “law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.... ” Id.
The majority reverses, finding the officer did not give legal justification for detaining the defendant and that there is no evidence of suspicious activity prior to the officer stopping the defendant. However, I do not find that the encounter | ^between the officer and the defendant rose to the level necessitating a finding of reasonable suspicion under the Fourth Amendment.
In this case, the officer approached the defendant and began conversing with him, asking him “how he was doing.” The record reveals that the officer then asked the defendant for his identification, which the defendant handed over, and the two continued to “talk[ ] a little bit.” The officer then asked the defendant if he had anything illegal on his person, to which the defendant responded affirmatively.
Relying on the above jurisprudence, I conclude that the officer in this case had the right, without any reasonable suspicion of criminal activity, to approach the defendant and ask for his identification and ask questions. Further, I find that there is no evidence that the officer’s request was followed by an “unmistakable show of official authority indicating to the [defendant]” that he was not free to leave. See Herrera, 23 So.3d at 897 (citing I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). The defendant voluntarily complied with the officer’s request for identification. Further, he voluntarily offered a response to the officer’s potentially incriminating question. There is no evidence that the defendant’s response to the officer was coerced. I note that the officer testified that he was familiar with *118 the defendant from previous encounters around town such as football games and other civic functions The officer related that the defendant had previously been sociable and willing to speak to officers.
In light of the above, it is my view that the officer acted permissibly. For these reasons, I would affirm the trial court’s denial of the defendant’s motion to suppress.