PAUL A. BONIN, Judge.
| Bradley Gayton appeals his conviction for possession of cocaine, a controlled dangerous substance. In his sole assignment of error, Mr. Gayton asserts that the trial judge abused his discretion by improperly denying his motion to suppress the evidence seized as a result of a warrantless search of his person at the time of his arrest. The trial judge found Detective Brooks’ uncontradicted testimony that, from his extensive experience with narcotics enforcement, he believed that he had observed a. hand-to-hand illegal drug transaction between Mr. Gayton and his co-defendant, Alfred Jones, sufficient to establish probable cause for the arrest of Mr. Gayton. Applying the trial judge’s supported findings of fact, we also conclude that probable cause was present. And, because a search incident to a lawful arrest is a well-recognized exception to the Fourth Amendment’s warrant requirement, the trial judge was legally correct in determining that the search was reasonable and that the evidence seized should not be suppressed. Thus, we affirm Mr. Gayton’s conviction and sentence.[1]
|2We turn now to a fuller explanation of our decision.
*742 I
•In this Part we set forth the facts contained in the uncontradicted police testimonies at the hearing on Mr. Gayton’s motion to suppress and at trial. See State v. Sylvester, 02-0743, p. 3 (La.App. 4 Cir. 12/11/02); 834 So.2d 1166, 1168 (“In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence from the motion hearing. It may also consider the evidence presented at trial.”). We note at the outset that Mr. Gayton did not avail himself of the right to testify at the suppression hearing despite the protection afforded the use of such testimony. See La.C.Cr.P. art. 703 E(1) (“The defendant’s testimony [at a hearing on a motion to suppress] cannot be used by the state except for the purpose of attacking the credibility of the defendant’s testimony at the trial on the merits.”).
The New Orleans Police Department received several complaints about criminal activity, specifically, armed robberies and burglaries, in and around the 2200 block of St. Anthony Street. In response, the Fifth District narcotics unit was 'assigned to proactive patrol of the area, and Detective Travis Brooks was ordered to conduct surveillance for suspicious activity.[2] Detective Brooks, dressed in plain clothes and driving an unmarked police vehicle, situated himself on the 2200 block of St. Anthony Street in the early afternoon, specifically focusing his attention on the residence located at 2221 St. Anthony Street.[3] A “take-down” unit, consisting of several other officers from the narcotics unit including Detective Todd Durel, |swas located nearby and was in continuous radio communication with Detective Brooks to perform such tasks as necessary to facilitate his continued, uncompromised surveillance of the area.
Shortly after beginning his unobstructed surveillance roughly twenty feet from the residence, Detective Brooks observed Mr. Jones exit the house, stand on the porch, and look in the direction of Lake Pontchartrain or toward the 2300 block of St. Anthony Street. After roughly ten minutes, Mr. Gayton approached from that direction and joined Mr. Jones on the porch; the men never entered the house together. Detective Brooks could not hear the men’s conversation on the porch, but did observe Mr. Gayton reach into his shirt pocket, hand money to Mr. Jones, and, in return, receive a small unknown object which he placed in the left front pocket of his pants.
From his extensive experience with narcotics enforcement, Detective Brooks believed that he had observed Mr. Gayton and Mr. Jones engage in a hand-to-hand drug transaction. Detective Brooks alerted Detective Durel and the other members of the “take-down” unit, describing Mr. Gayton, his distinctive clothing and his direction of travel. Mr. Gayton then walked out of Detective Brooks’ sight, and his location and activities were briefly unac *743 counted for. Shortly thereafter, Detective Durel located Mr. Gayton leaving a nearby convenience store; the police then stopped and searched him. Detective Durel found crack cocaine in a clear plastic bag in one front pocket of Mr. Gayton’s pants and a glass cylinder in a brown paper bag in the other. The detective placed Mr. Gayton in handcuffs and informed him of his Miranda rights. Mr. Gayton then stated that he had purchased the cocaine and “crack pipe” for someone else.
l4Later, other officers stopped Mr. Jones in his vehicle and searched him, recovering $415 in cash but no drugs. Detective Du-rel then left to obtain a search warrant for the residence at 2221 St. Anthony Street. During that time, Reginald Cummings, another co-defendant, exited the house and was detained by other officers. In executing the search warrant, the officers discovered a “crack pipe” on a coffee table, a marijuana cigarette under a bed, crack cocaine in a pair of shorts hanging on a bedroom door, and a digital scale, small plastic bags and razors on the kitchen table. The police also found a bill for the house addressed to Mr. Cummings, who was subsequently arrested.[4]
II
In this Part we determine whether the trial judge abused his discretion by denying Mr. Gayton’s motion to suppress the evidence seized during the warrantless search of his person. Mr. Gayton claims that this search was unreasonable under the Fourth Amendment, arguing that even if the police officers possessed the requisite reasonable suspicion to conduct an investigatory stop, the police failed to articulate a proper basis for conducting a Terry weapons frisk of his person. See, e.g., State v. Carter, 13-1452 (La.App. 4 Cir. 12/19/13); 131 So.3d 479. Mr. Gayton also contends that the police lacked probable cause to arrest him before initiating the stop and thus the resultant search cannot be justified as incidental to his lawful arrest. See, e.g., United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
Because we find that probable cause existed prior to the police initiating the stop of Mr. Gayton, we do not discuss the merits of his claim that an impermissible | ¿weapons frisk occurred. The trial judge found credible the uncontradicted testimony of Detective Brooks that he had witnessed what he believed to be a hand-to-hand illegal drug transaction between Mr. Gayton and Mr. Jones. We apply these supported factual findings to our de novo review of the trial judge’s rulings on questions of law and conclude that probable cause was present to justify the arrest of Mr. Gayton. As the police effectuated a lawful arrest, a search incident to that arrest is permitted and reasonable under the Fourth Amendment.
A
In this Part we discuss the legal precepts that guide our review of Mr. Gay-ton’s assignment of error.
The Fourth Amendment to the U.S. Constitution and Article I, Section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. See Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (quoting Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)) (commenting that “the Fourth Amendment protects people, not places”). In order for *744 the Fourth Amendment to guard a citizen from unreasonable state action, however, that person must have a reasonable expectation of privacy at the time of the seizure or search. See id. (quotations omitted).[5]
“Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns ... and protected individual privacy interests.” [6] State v. Francis, 10-1149, pp. 4-5 (La.App. 4 Cir. 2/16/11); 60 So.3d 703, 708 (quotations omitted). “[T]he reasonableness of any intrusion on an ^individual's privacy interests depends on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers.” State v. Kelley, 05-1905, p. 5 (La.7/10/06); 934 So.2d 51, 54 (quoting Pennsylvania v. Mimms, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)) (quotations omitted).
Warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the governmental conduct is shielded by one of the few narrowly-drawn exceptions to the warrant requirement. See State v. Surtain, 091835, p. 7 (La.3/16/10); 31 So.3d 1037, 1043 (citing Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). The prosecution carries the burden of proving that a warrantless search is compatible with one of these exceptions and is thus reasonable under the Fourth Amendment. See La. C.Cr.P. art. 703 D. This requires that pertinent facts and circumstances be articulated through testimony by law enforcement officials at evidentiary hearings on motions to suppress. See State v. Temple, 02-1895, p. 5 (La.9/9/03); 854 So.2d 856, 860.
To enforce the mandates of the Fourth Amendment and La. Const. art. I, § 5, evidence recovered pursuant to an unreasonable search or seizure may be suppressed and rendered inadmissible at trial. See Mapp, 367 U.S. at 656-57, 81 S.Ct. 1684. Evidence recovered as a result of an unconstitutional search and seizure should not be suppressed, however, simply as a result of the violation of a citizen’s constitutional rights. See Herring v. United States, 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (citing Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). A trial judge should only grant a motion to suppress upon finding that the application of the exclusionary rule furthers the interests protected by that constitutional guarantee. See Hudson v. Michigan, 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).
| /With regards to violations of the Fourth Amendment, the exclusionary rule should only apply where it results in appreciable deterrence of police misconduct. See Herring, 555 U.S. at 141, 129 S.Ct. 695 (citing United States v. Leon, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (2004)). “This requires ‘an assessment of the flagrancy of the police misconduct[ ]’ and review of whether ‘the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.’ ” State v. McClen *745 don, 13-1454, p. 5 (La.App. 4 Cir. 1/30/14); 133 So.3d 239, 245 (quoting Herring, 555 U.S. at 143, 129 S.Ct. 695). The trial judge, prior to ruling on a motion to suppress, should then weigh the benefit of the resulting deterrence against the social costs of the application of the exclusionary-rule — stifling truth-seeking and releasing potentially guilty defendants. See Herring, 555 U.S. at 141, 129 S.Ct. 695; Hudson, 547 U.S. at 591, 126 S.Ct. 2159.
In our review of a trial judge’s decision to grant or deny a petitioner’s motion to suppress evidence seized as a result of a warrantless search, we first examine the factual findings underlying that ruling. See Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (“The constitutional validity of a warrantless search is preeminently the sort of question which can only be decided in the concrete factual context of the individual case.”). “We grant great deference to these findings of fact[] and will ‘not overturn those findings unless there is no evidence to support [them].’ ” McClendon, 13-1454, p. 6; 133 So.3d at 245 (quoting State v. Wells, 08-2262, pp. 4-5 (La.7/6/10); 45 So.3d 577, 580-81). See also State v. Morgan, 092352, p. 5 (La.3/15/11); 59 So.3d 403, 406 (“Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges.... ”); Sylvester, 02-0743, p. 3; 834 So.2d at 1168 (holding that findings of fact made by the trial judge in its ruling on a motion to suppress are reviewed under a “clear error” standard).
|sThe heightened deference granted to a trial judge’s factual findings is rooted in the limited scope of our appellate review of criminal matters as set forth in La. Const. art. V, § 10(B), which provides, “In criminal cases [an appellate court’s] jurisdiction extends only to questions of law.” Excessive intrusion into the factual findings of trial judges imbalances the “complementary role of trial courts and appellate courts,” State v. Love, 00-3347, p. 9 (La.5/23/03); 847 So.2d 1198, 1206, as trial judges have the unique “opportunity to observe the witnesses and weigh the credibility of their testimony.” Wells, 08-2262, p. 5; 45 So.3d at 581. See also State v. Dorsey, 99-1819, p. 5 (La.App. 4 Cir. 4/19/00); 763 So.2d 21, 24.
Applying those supported findings of fact, we then review the trial judge’s holdings on questions of law, including the reasonableness of governmental conduct under the Fourth Amendment and La. Const. art. I, § 5, de novo. See Wells, 08-2262, p. 4; 45 So.3d at 580; McClendon, 13-1454, p. 6; 133 So.3d at 245. One such question of law is the trial judge’s determination of whether probable cause existed to justify a warrantless arrest. See Sylvester, 02-0743, p. 3; 834 So.2d at 1168. Should we find no reversible legal error, we must then determine whether the trial judge abused his discretion by granting or denying the motion to suppress. See Wells, 08-2262, p. 5; 45 So.3d at 581. This is the appropriate standard to be applied as a ruling as to “whether the exclusionary rule is being properly applied under Fourth Amendment doctrine is a mixed question of law and fact.” McClendon, 13-1454, p. 6; 133 So.3d at 246. See also State v. Lewis, 11-0889, p. 11 (LaApp. 4 Cir. 2/1/12); 85 So.3d 150, 157-58.
I i)B
The district attorney contends that the warrantless search of Mr. Gayton by Detective Durel was constitutionally permissible as incidental to his lawful "arrest. See State v. Sherman, 05-0779, p. 8 (La.4/4/06); 931 So.2d 286, 292 (citing Robinson, 414 U.S. at 224, 94 S.Ct. 467; State v. Breaux, 329 So.2d 696, 699 (La.1976)) *746 (“It is well established that a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition of warrantless searches.”).[7]
The U.S. Supreme Court has long held that the warrantless arrest of a suspect based on probable cause is reasonable under the Fourth Amendment. See Robinson, 414 U.S. at 235, 94 S.Ct. 467. Article 213 of the Louisiana Code of Criminal Procedure permits officers to execute war-rantless arrests of persons when “[t]he person to be arrested has committed an offense in his presence.... ” See La. C.Cr.P. art. 213 A(l).[8] See also Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (“If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.”).
[,0“ProbabIe cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense.” Surtain, 09-1835, p. 7; 31 So.3d at 1043. Probable cause is a non-technical concept, weighing “factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Gates, 462 U.S. at 231, 103 S.Ct. 2317. This standard does not require that “the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances.” Sylvester, 02-0743, p. 4; 834 So.2d at 1168. The concept is fluid, “turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.” Gates, 462 U.S. at 232, 103 S.Ct. 2317. “The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person.” Sylvester, 02-0743, p. 5; 834 So.2d at 1169 (citing State v. Fisher, 97-1133, p. 7 (La.9/9/98); 720 So.2d 1179, 1184).
“The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolu *747 tion of conflicting evidence that a reasonable doubt or near a preponderance standard demands.” State v. Lawrence, 02-0363, p. 3 (La.App. 4 Cir. 5/8/02); 817 So.2d 1216, 1220. Our review is “based on an assessment of the collective knowledge possessed by all of the police involved in the investigation.... ” State v. Pratt, 08-1819, p. 1 (La.9/4/09); 16 So.3d 1163, 1164 (per curiam). “Deference should be given to the experience of the policemen who were present at the time of the incident. A certain look or gesture may not |nmean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts.” State v. Cook, 99-0091, p. 7 (La.App. 4 Cir. 5/5/99); 733 So.2d 1227, 1232 (citations omitted). Furthermore, “[t]he reputation of the area is an articulable fact upon which a police officer may legitimately rely.” Lawrence, 02-0363, p. 3; 817 So.2d at 1220.
After examining the events leading up the arrest, the trial judge should “decide “whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to’ probable cause.” Maryland v. Pringle, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citing Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)) (emphasis added). The subjective intentions of police officers “play no role in ordinary, probable-cause Fourth Amendment analysis.” Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). “[A] reviewing court is not constrained by a law enforcement officer’s characterization of a detention or search, nor is the court’s analysis of the facts circumscribed by that characterization.” Surtain, 09-1835, p. 9; 31 So.3d at 1045. “[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s actions does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.” Whren, 517 U.S. at 813, 116 S.Ct. 1769.
Once probable cause exists to justify a lawful arrest, a search incidental to that arrest is permissible and requires no further justification.[9] See Robinson, 414 U.S. at 235, 94 S.Ct. 467. “A police officer’s determination as to how and where to search the person of a suspect whom he has arrested is a necessarily a quick ad hoc judgment 112which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.” Sherman, 05-0779, p. 14; 931 So.2d at 295 (citing Robinson, 414 U.S. at 235, 94 S.Ct. 467). “It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is ... ‘reasonable’ ... under [the Fourth] Amendment.” Robinson, 414 U.S. at 235, 94 S.Ct. 467.
“Warrantless searches incidental to arrest are reasonable because when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession.” Sherman, 05-0779, p. 14; 931 So.2d at 295 (citing Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). Thus, “[t]he justifica *748 tion or reason for the authority to search incident to a lawful arrest rests as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial.” Id., 05-0779, p. 11; 931 So.2d at 293 (citing Robinson, 414 U.S. at 234, 94 S.Ct. 467). The authority to search a person incident to a lawful arrest “does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the' person of the suspect.” Robinson, 414 U.S. at 235, 94 S.Ct. 467.
C
Applying these guiding precepts to the facts of the present case, we find that the warrantless search of Mr. Gayton was reasonable as incident to his lawful arrest. There is no question that Mr. Gayton, while walking down the sidewalk, was entitled to the protection of the Fourth Amendment and La. Const. art. I, § 5. See, e.g., Terry, 392 U.S. at 9, 88 S.Ct. 1868. The crucial inquiry in this case is whether probable 113cause existed to justify the arrest of Mr. Gayton prior to the police initially stopping him. Our analysis therefore centers on Detective Brooks’ uncon-tradicted testimony.
As previously stated, while on surveillance for suspicious activity, Detective Brooks observed Mr. Gayton from roughly twenty feet away receive a small unknown object in exchange for money. His view was unobstructed, and Detective Brooks stated that his focus was solely on Mr. Jones and Mr. Gayton. Based on his experience with narcotics enforcement, Detective Brooks testified that he believed that he had witnessed a hand-to-hand illegal drug transaction. Mr. Gayton did not testify or introduce any evidence to contradict Detective Brooks’ testimony. The trial judge, in denying Mr. Gayton’s motion to suppress, properly granted deference to Detective Brooks’ testimony.
Accepting this supported' factual finding, we must next determine de novo whether probable cause existed to justify the arrest of Mr. Gayton. We find that Detective Brooks acted as an objectively reasonable officer in determining that Mr. Gayton had purchased narcotics. After Detective Brooks witnessed the suspected drug transaction from close proximity, probable cause existed for Detective Durel to arrest Mr. Gayton for possession of an illegal narcotic. Since the police officers had probable cause, a search incidental to Mr. Gayton’s arrest was reasonable under the Fourth Amendment.
The Louisiana Supreme Court has twice found that a police officer, after witnessing a hand-to-hand transaction, had probable cause to believe that an offense had occurred. See State v. Smith, 11-0312, p. 1 (La.2/21/11); 56 So.3d 232, 233 (per curiam); Surtain, 09-1835, p. 12; 31 So.3d at 1046. In Smith, the police witnessed a hand-to-hand transaction occur in a hotel parking lot between a | Hperson on foot and the occupant of a vehicle that was driving slowly, possibly “trolling” for drug buyers, through two separate hotel parking lots known for drug trafficking. The Court found the circumstances sufficient to establish probable cause to justify the arrest of the defendant.
In Surtain, the police were performing surveillance in a neighborhood when they observed the defendant standing in front of an abandoned apartment building known for drug sales. An individual approached and handed money to the defendant in exchange for a small, white, unknown object that he removed from a larger bag. The Court found the subsequent search of the defendant to be reasonable as incident to his lawful arrest, *749 holding that the police, after witnessing a hand-to-hand transaction, were objectively reasonable in believing that a crime had occurred.
Thus, we find that the trial judge did not abuse his discretion in denying Mr. Gay-ton’s motion to suppress the evidence seized from his person as a result of a warrantless search.
DECREE
We affirm the conviction and sentence of Bradley Gayton.
AFFIRMED
BELSOME, J., dissent with reasons.

. We have — as always — conducted a review for patent errors. See La.C.Cr.P. art. 920(2). The only error detected in these proceedings was the failure of the trial judge to observe the mandatory twenty-four-hour delay between the denial of Mr. Gayton’s motion for *742 new trial and the imposition of sentence. See La.C.Cr.P. art. 873. But see State v. White, 404 So.2d 1202, 1204 (La.1981) (when "there has been no objection raised regarding the sentence imposed” and "no showing or suggestion that defendant was prejudiced by the failure to observe the delay,” judicial efficiency dictates that a reviewing court "need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged”).

. Detective Brooks testified that narcotics units are assigned to conduct surveillance for non-drug-related crimes because the units are usually better equipped to conduct the task.

. Detective Brooks’ motivation for focusing on that particular house is unclear. The rea-sonings testified to are various and include a tip from a confidential informant, complaints from concerned citizens, and no reason whatsoever.

. Mr. Cummings, a co-defendant, has also filed an appeal of his subsequent conviction and sentence. At a later date we will render a decision in his appeal under the same proceeding number as this one.

. The limitations on governmental action and remedies for such conduct set forth in the Fourth Amendment and the U.S. Supreme Court’s interpretive jurisprudence apply to State prosecutions through the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

. We also apply a reasonableness standard when analyzing governmental conduct under La. Const. art. I, § 5. See State v. Tucker, 626 So.2d 707, 711 (La.1993). See also State v. Lewis, 11-0889, p. 4 (La.App. 4 Cir. 2/1/12); 85 So.3d 150, 154.

. Here, the initial search of Mr. Gayton actually occurred prior to his formal arrest. When the formal arrest follows "quickly on the heels of the challenged search,” however, the United States Supreme Court has not found it “particularly important that the search preceded the arrest than vice versa.” Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Naturally, it is "axiomatic that an incident search may not precede an arrest and serve as part of its justification.” Sherman, 05-0779, p. 8; 931 So.2d at 292 (citing Sibron, 392 U.S. at 63, 88 S.Ct. 1889).

. La.C.Cr.P. art. 213 A provides:
A. A peace officer may, without a warrant, arrest a person when any of the following occur: ,
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or on close pursuit.
(2) The person to be arrested has committed a felony, although not in the presence of the officer.
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.
(4) The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state or the United States holds an arrest warrant for a felony offense.

. This differs from our analysis of Terry stops in which police officers must have reasonable suspicion to initiate the investigative stop and then articulate proper grounds for conducting a protective pat-down search of the person for weapons. See, e.g., Carter, 13-1452; 131 So.3d 479. See La.C.Cr.P. art. 215.1.