CLARK, Justice.
 
 [1]
 

 | , The issue is whether the district court erred in suppressing crack cocaine and heroin seized from the back pocket of the defendant, Graylin Surtain.
 
 [2]
 
 Finding that the district court and the court of appeal were improperly constrained in them analysis of the facts by the officers’ characterization of the search, we reverse the lower courts’ suppression of the evidence and remand for further proceedings.
 

 FACTS and PROCEDURAL HISTORY
 

 On May 31, 2007, the New Orleans Police Department operated a two-man surveillance team in the 1300 block of Bien-ville Street in New Orleans. The police surveillance of this area was prompted by recent shootings in that location. Officer Davillier, in plain clothes, sat in an unmarked patrol unit, observing the area. Officer Pratt, in a marked police vehicle, was located a block away.
 

 From his surveillance position, Officer Davillier observed the defendant, Graylin Surtain, or, “Lavender,” as he was known to the officer at that time, standing in front of an abandoned apartment building at 1306 Bienville Street. Officer Davillier saw an individual approach the defendant and give to him an unknown amount of U.S. currency. In response, the defendant opened a clear plastic bag he 12was holding, reached inside, and extracted a small object that the defendant held between his index finger and his thumb. The defendant then placed the small object into the hand of the person who had given him money. Based on his five and a half years of experience as a police officer, nearly all of which was served as a narcotics officer, Officer Davillier believed he had just observed a hand-to-hand narcotics transaction.
 

 Officer Davillier then contacted Officer Pratt, informing his surveillance partner of what he had observed and giving Officer Pratt a physical description of the defendant and the clothing the defendant was wearing. As Officer Pratt approached the area in his marked police unit, Officer Davillier saw the defendant, now sitting on the steps of the abandoned apartment building, become aware of the police unit. The officer observed the defendant immediately close the clear plastic bag with a twisting motion and place the bag into his rear right pocket. As Officer Pratt exited his vehicle, Officer Davillier left his surveillance location to help Officer Pratt. Officer Davillier heard his partner instruct the defendant to join him at the front of his police vehicle. After the defendant complied with this request, Officer Davillier saw Officer Pratt reach into the defendant’s rear pocket and remove the clear plastic bag.
 

 Officer Pratt described the abandoned apartment building, where the defendant was sitting when he drove up, as one of the police department’s “hot spots.” As he approached the defendant, Officer Pratt could see that the clear plastic bag which the defendant was wrapping contained a white substance. At that point, Officer Pratt believed, without a doubt, that the substance inside the bag was an illegal narcotic. In addition, Officer Pratt saw the defendant wrapping the bag in a way that he knew to be consistent with narcotic sales. Upon his approach, Officer Pratt saw the defendant immediately place the wrapped up bag into his right rear pocket.
 

 
 *1041
 
 | .¡Officer Pratt advised the defendant that he was under investigation for illegal drug transactions, informed the defendant of his constitutional rights, and conducted a brief pat down search. When Officer Pratt felt the lump in the defendant’s right rear pocket, he immediately recognized the lump to be the same bag he had just seen the defendant holding. Officer Pratt removed the bag from the defendant’s pocket and saw the same white rock-like substance he had seen before the bag was pocketed, as well as shiny aluminum foils which proved to contain a brown powder substance. At that point, Officer Pratt placed the defendant under arrest and again informed him of his constitutional rights.
 

 Inside the clear plastic bag removed from the defendant’s back pocket were several pieces of what appeared to be crack cocaine and ten foils suspected to contain heroin. Field tests of the substances were positive for crack cocaine and heroin. After he conducted a more extensive search of the defendant, Officer Pratt retrieved $191 cash in small denominations, stacked in a manner the officer found consistent with narcotics dealing.
 

 The state charged the defendant in a two-count bill of information with possession with intent to distribute heroin and cocaine. Prior to trial, the defense filed a motion to suppress the drug evidence seized from the defendant.
 
 [3]
 
 A hearing was held on the defendant’s suppression motion, at which the testimony of the two officers was adduced.
 

 In addition to describing the circumstances of the surveillance and arrest, Officer Davillier testified that the defendant was not under arrest at the time Officer Pratt reached into his pocket and retrieved the bag containing the drugs. According to Officer Davillier, the basis for the stop that Officer Pratt conducted was only to |4confirm that what the defendant was holding was illegal narcotics.
 

 Officer Pratt agreed, and testified that, based on the information conveyed by his partner, and his own observation of the defendant, he initially approached the defendant to conduct an investigatory stop, not an arrest. Officer Pratt testified that the defendant was not under arrest until after he removed the bag from the defendant’s pocket and confirmed that the defendant was carrying crack cocaine and heroin. Officer Pratt stated that he
 
 Mir-andized
 
 the defendant prior to his search only in an abundance of caution and not in response to an arrest. Although he later referred to officer safety, Officer Pratt explained his removal of the bag from the defendant’s pocket was based on his knowledge that the defendant had narcotics in his pocket.
 

 Defense counsel, in support of his motion to suppress the cocaine and heroin seized from the defendant, argued that Officer Pratt crossed the line between conducting a pat down search for weapons of the defendant, consistent with an investigatory stop, and a search incident to arrest, based upon probable cause. The defense contended that, if Officer Pratt had actually seen cocaine in the defendant’s bag, and had recognized it as such, the officer would have immediately arrested the defendant. Instead, the officer informed the defendant he was conducting an investigation and reached into the defendant’s pocket, which the defense contended was without legal justification. Defense counsel pointed out that Officer
 
 *1042
 
 Pratt had not testified that he was fearful the defendant carried a weapon, nor was the point legitimately offered that officer safety was the basis for the search. The defense asserted that the officer’s suspicion that the defendant may have been carrying drugs was not enough to justify removing an object from the defendant’s pocket, although conceding that such a search would have been reasonable as a search incident to |sarrest, had there been probable cause to arrest.
 

 Agreeing with the defense’s reasoning, the district judge granted the motion to suppress.
 
 [4]
 
 The district judge held that, in the absence of a legitimate fear for officer safety, the police could not conduct a pat down for contraband, even when the officer believed he had seen what he believed to be drugs in the defendant’s possession. The district judge specifically stated she found the officers to be credible, but held the police exceeded their authority with the search.
 
 [5]
 

 In a 2-1 decision, the court of appeal denied the state’s writ, affirming the suppression of the evidence.
 
 [6]
 
 The appellate majority determined that a police officer must fear for his safety or believe that a suspect is armed in order to frisk a suspect during an investigatory stop. Because Officer Pratt did not testify that he was afraid or that he thought the defendant was armed, and did not provide testimony that the bulge he detected in the defendant’s pocket felt like an object whose contour and mass made its identity immediately apparent, the court of appeal majority found the trial court correctly granted the motion to suppress. The dissenting judge believed that a consideration of the totality of the circumstances provided the officers with reasonable suspicion sufficient to justify an investigatory stop, frisk and search of the defendant.
 

 We granted the state’s writ application to review the correctness of the suppression of the drug evidence,
 
 [7]
 
 and for the following reasons, reverse the rulings of the lower courts.
 

 | .LAW AND DISCUSSION
 

 Both the United States and Louisiana Constitutions prohibit unreasonable searches and seizures, and a warrant based upon probable cause is normally required for such a search to be conducted.
 
 State v. Warren,
 
 2005-2248 p. 8 (La.2/22/07), 949 So.2d 1215, 1223. The Fourth Amendment provides that “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const. Amend. IV. Similarly, the Louisiana Constitution protects a citizen’s right to privacy:
 

 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or
 
 *1043
 
 things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
 

 La. Const. Art. 1, § 5.
 

 An analysis of the application of these constitutional principles in a given factual circumstance must focus on the reasonableness of the governmental action involved. “[T]he reasonableness of any intrusion on an individual’s privacy interests depends on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers.”
 
 State v. Kelley,
 
 2005-1905 p. 5 (La.7/10/06), 934 So.2d 51, 54,
 
 cert. denied,
 
 549 U.S. 1065, 127 S.Ct. 691, 166 L.Ed.2d 536 (2006),
 
 citing Pennsylvania v. Mimms,
 
 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (internal quotation marks omitted). “The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a 17citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so.”
 
 Sibron v. New York,
 
 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).
 

 A search and seizure conducted without a warrant issued on probable cause is
 
 per se
 
 unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993);
 
 Warren,
 
 2005-2248 p. 13, 949 So.2d at 1223. A traditional exception to the warrant requirement is a search incident to a lawful arrest based upon probable cause.
 
 United States v. Robinson,
 
 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). “Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense.”
 
 State v. Parker,
 
 2006-0053 p. 2 (La.6/16/06), 931 So.2d 353, 355;
 
 State v. Ceaser,
 
 2002-3021 p. 6 (La.10/21/03), 859 So.2d 639, 644.
 

 The reasonableness of the arrest based upon probable cause under the Fourth Amendment extends to the search incidentally conducted.
 
 See Robinson,
 
 414 U.S. at 235, 94 S.Ct. at 477 (“A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.”).
 
 Chimel v. California,
 
 395 U.S. 752, 762-763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), explained:
 

 |sWhen an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer’s safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee’s person in order to prevent its concealment or destruction.
 

 Thus, during a search of a citizen conducted incident to an arrest, a searching officer may seize weapons and evidence of crime.
 

 
 *1044
 
 Another such exception to the warrant requirement for a search was recognized in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 
 Terry
 
 held that a law enforcement officer, who reasonably concludes in light of his experience that criminal activity may be occurring, or may have occurred, may briefly stop a suspicious person and make reasonable inquiries for the purpose of confirming or dispelling his suspicions.
 
 Id.,
 
 392 U.S. at 30, 88 S.Ct. at 1884. In addition to making a brief detention, the officer may conduct a limited pat down search for weapons when the officer has a justifiable belief that the individual whom he is investigating is armed.
 
 Terry,
 
 392 U.S. 24, 88 S.Ct. at 1881. However, “[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.... ”
 
 Adams v. Williams,
 
 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). The scope of this limited protective search was explained in
 
 Dickerson:
 

 Rather, a protective search-permitted without a warrant and on the basis of i"easonable suspicion less than probable cause-must be strictly “limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.”
 
 Terry, supra,
 
 at 26, 88 S.Ct., at 1882; ... If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under
 
 Terry
 
 and its fruits will be suppressed.
 

 Id.,
 
 508 U.S. at 373, 113 S.Ct. at 2136.
 

 Courts must engage in a fact-intensive inquiry to determine whether the ^detention of a citizen by police is an investigatory stop or an arrest. Similarly, “[t]he constitutional validity of a warrant-less search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case.”
 
 Sibron,
 
 392 U.S. at 59, 88 S.Ct. at 1901. In
 
 State v. Miller,
 
 2000-1657 p. 2-3 (La.10/26/01), 798 So.2d 947, 949, we discussed the difficulty in making these distinctions:
 

 Given the fact-intensive nature of the inquiry into whether a detention constitutes an investigatory stop, by its nature a brief encounter between the police and a citizen based on reasonable suspicion of criminal activity,
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or an arrest, an extended restraint on liberty which requires a greater showing of probable cause, “courts have been unable to develop a bright-line test to determine when police-citizen encounters exceed the bounds of mere
 
 Terry
 
 stops.”
 
 United States v. Ienco,
 
 182 F.3d 517, 524-25 (7th Cir.1999). Because “[t]here is no scientifically precise formula that enables courts to distinguish between valid investigatory stops ... and other detentions that the law deems sufficiently coercive to require probable cause,”
 
 United States v. Zapata,
 
 18 F.3d 971, 975 (1st Cir.1994), a court inquiring into the nature of a forcible detention must examine “whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.”
 
 United States v. Sharpe,
 
 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (citations omitted). A court making this assessment “should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.”
 
 Id.
 

 The controversy in the present case stems from the circumspection with which the investigating officers described them conduct leading to the recovery of
 
 *1045
 
 the evidence. Both police officers testified that an investigatory stop of the defendant occurred, and that, until the discovery of the drugs in the defendant’s pocket, no arrest was made. However, a reviewing court is not constrained by a law enforcement officer’s characterization of a detention or search, nor is the court’s analysis of the facts circumscribed by that characterization.
 
 State v. Canezaro,
 
 2007-0668 p. 5-6 (La.6/1/07), 957 So.2d 136, 140. By relying solely on the officers’ characterization |inof their actions, and in failing to conduct their own analysis of the facts, both lower courts erred in finding that the scope of the search exceeded that of an investigatory stop and that the motion to suppress should be granted.
 

 Generally speaking, the subjective intentions or beliefs of the police “play no role in ordinary, probable-cause Fourth Amendment analysis.”
 
 Whren v. United States,
 
 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996);
 
 State v. Sherman,
 
 2005-0779 p. 14 (La.4/4/06), 931 So.2d 286, 295. We have previously held, that, “... the determination of reasonable suspicion for an investigatory stop, or probable cause for an arrest, does not rest on the officer’s subjective beliefs or attitudes but turns on a completely objective evaluation of all of the circumstances known to the officer at the time of his challenged action.”
 
 State v. Pratt,
 
 2008-1819 p. 1 (La.9/4/09), 16 So.3d 1163, 1164 (internal citations omitted); Kelley, 2005-1905 p. 5, 934 So.2d at 54.
 

 Courts cannot abdicate them role to analyze the “totality of the circumstances” presented in a particular case before making a determination whether probable cause to arrest exists.
 
 Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The decisions articulating the probable cause standard emphasize that “it is a ‘practical, nontechnical conception.’ ”
 
 Id.,
 
 462 U.S. at 231, 103 S.Ct. at 2328,
 
 citing Brinegar v. United States,
 
 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). “In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.”
 
 Id., citing Brinegar,
 
 338 U.S. at 175, 69 S.Ct. at 1310.
 
 Gates
 
 further explained:
 

 The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical | npeople formulated certain common-sense conclusions about human behavior; jurors as factfin-ders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
 

 Id.,
 
 462 U.S. at 231, 103 S.Ct. at 2328,
 
 citing United States v. Cortez,
 
 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).
 
 [8]
 
 Indeed, “probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.”
 
 Id.,
 
 462 U.S. at 232, 103 S.Ct. at 2329.
 

 In order to determine whether the police officers had probable cause to arrest the defendant under the factual circumstances before us in the present case, we must “examine the events leading up to
 
 *1046
 
 the arrest, and then decide ‘whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to’ probable cause.”
 
 Maryland v. Pringle,
 
 540 U.S. 366, 371, 124 S.Ct. 795, 800, 157 L.Ed.2d 769 (2003),
 
 citing Ornelas v. United States,
 
 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In doing so, we are mindful that our determination of whether probable cause existed can be “based on an assessment of the collective knowledge possessed by all of the police involved in the investigation.”
 
 Pratt,
 
 2008-1819 p. 1,16 So.3d at 1164. In addition, we note “[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.”
 
 Sibron,
 
 392 U.S. at 63, 88 S.Ct. at 1902. However, “it is well established searches incident to arrest conducted immediately before formal arrest are valid if probable cause to arrest existed prior to the search.”
 
 Sherman,
 
 2005-0779 p. 9, 931 So.2d at 292;
 
 see Rawlings v. Kentucky,
 
 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 |12(1980) (“Where the formal arrest followed quickly on the heels of the challenged search of petitioner’s person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.”).
 

 Applying these concepts to the present case, we find the facts adduced at the suppression hearing support our determination that the search of the defendant was a valid one incident to an arrest based upon probable cause. A police officer may make a warrantless arrest of a citizen when the person to be arrested has committed an offense in his presence. La. C.Cr.P. art. 213. Officer Davillier observed the defendant receive money in exchange for a small object that the defendant extracted from a clear plastic bag he was holding. Based on his experience, Officer Davillier believed he witnessed a hand-to-hand narcotics transaction. Officer Pratt observed the defendant tying off the clear plastic bag in a manner he knew was consistent with narcotics dealing, and saw that the bag was filled with a white substance which he immediately knew from his experience was crack cocaine. Consequently, the officers had probable cause to arrest the defendant when they approached him, notwithstanding the fact that Officer Pratt informed the defendant that he was only conducting an investigation.
 

 Although we are entitled to review the collective knowledge of the two officers involved in the surveillance and arrest of the defendant in our analysis, we find that Officer Pratt’s testimony alone would have been sufficient to find probable cause to arrest. Officer Pratt believed the white rock-like substance he saw in the clear plastic bag in plain view while he was standing on a public street to be illegal drugs. His belief under the circumstances was reasonable. Therefore, Officer Pratt had probable cause to believe that Surtain, at the very least, possessed illegal substances, and was justified in the warrant-less arrest and subsequent search of the defendant.
 
 See State
 
 |isu
 
 Melton,
 
 412 So.2d 1065, 1068 (La.1982) (search of the defendant’s boot was held to be a valid search incident to arrest where officer saw the defendant, while in a public place, put plastic bag containing a large number of pills in his boot).
 

 Officer Pratt was authorized to conduct a full search of the defendant’s person incident to the arrest for which probable cause existed, even though the defendant had not yet been formally placed under arrest. Officer Pratt’s testimony, that he removed the bag from the defendant’s pocket to recover evidence of a crime, would have been beyond the scope of a valid frisk for weapons permitted un
 
 *1047
 
 der
 
 Terry
 
 for an investigatory stop. However, the officer’s characterization of the action makes no difference in the final analysis of the legality of the search and does not change the fact that, in this case, probable cause actually existed to support a warrantless arrest of the defendant prior to the search.
 
 See Sherman,
 
 2005-0779 p. 16-17, 931 So.2d at 296 (“Although the officers testified that they did not believe they had arrested the defendant when they physically restrained him, that fact does not change the outcome; an officer’s uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized.”).
 

 Since the officers had probable cause to arrest the defendant,
 
 Terry
 
 is inapplicable and the lower courts erred in analyzing the present facts as an investigatory stop based on the officers’ testimony.
 
 See Sherman,
 
 2005-0779 p. 16, 931 So.2d at 296. Instead, the lower courts should have analyzed the totality of the circumstances to determine the legality of the warrant-less search.
 

 CONCLUSION
 

 We find the district court erred in granting the defendant’s motion to suppress the drug evidence seized from him. The police officers had probable cause to arrest the defendant based on their observations of a hand-to-hand narcotics transaction and |14of the drugs themselves. Because there was probable cause to arrest the defendant, the warrantless search of his person was reasonable under the federal and state constitutions as a search incident to an arrest based upon probable cause.
 

 DECREE
 

 For the foregoing reasons, the ruling of the district court granting the defendant’s motion to suppress, and the affirmation of that ruling by the court of appeal, is reversed. The motion to suppress is denied and this matter is remanded to the district court for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 JOHNSON, J., dissents.
 

 [1]
 

 . Kimball, C.J., did not participate in the deliberation of this opinion.
 

 [2]
 

 . The defendant's given name is sometimes referred to in the record as "Grayland.”
 

 [3]
 

 . The defense also filed a motion for a determination of whether there was probable cause for the arrest.
 

 [4]
 

 . In addition to granting the defendant’s suppression motion, the district judge found no probable cause for the arrest.
 

 [5]
 

 . The district judge stated: “I believe everything he said. Unfortunately, he jumped the gun.”
 

 [6]
 

 .
 
 State v. Surtain,
 
 2009-0497 (La.App. 4 Cir. 7/8/09) (unpublished).
 

 [7]
 

 .
 
 State v. Surtain,
 
 2009-1835 (La.11/20/09), 25 So.3d 781.
 

 [8]
 

 . Although these observations were originally made concerning the concept of “particularized suspicion,” the Supreme Court found them also applicable to the probable cause standard.