Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,581-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JAYDEN M. BOYD                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 388,468

Honorable Erin Leigh Waddell Garrett, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Holli Ann Herrle-Castillo

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

ROSS STEWART OWEN
JOHN CLAUDE PHILLIPS
Assistant District Attorneys

* * * * *

Before STONE, ROBINSON, and ELLENDER, JJ.

**STONE, J**.

This criminal appeal arises from the First Judicial District Court, the Honorable Erin Leigh Garrett presiding. The defendant, Jayden M. Boyd, was convicted of possession of marijuana, more than 14 grams but less than 2½ pounds; possession of a firearm or carrying a concealed weapon by a convicted felon; and illegal carrying of weapons while in possession of a controlled dangerous substance ("CDS"). The defendant was sentenced to 2 days in the parish jail for his possession of marijuana conviction, 10 years at hard labor without parole, probation or suspension of sentence and a $1,000 fine for his possession of a firearm by a convicted felon conviction, and 7 years at hard labor without parole, probation or suspension of sentence for his illegal carrying of weapons while in possession of a CDS conviction. The sentences were ordered to run concurrently.

The defendant now appeals both his convictions and sentences, asserting that the trial court erred in denying his motion to suppress. Specifically, the defendant argues that the evidence should be suppressed because he was not committing a crime when he was stopped. He also asserts that the evidence should be suppressed because the state failed to establish that he consented to the search of his vehicle and his backpack. For the following reasons, we affirm the defendant's convictions and sentences and remand the matter with instructions.

**FACTS AND PROCEDURAL HISTORY**

On April 7, 2022, Shreveport Police Sergeants Frankie Miles ("Sgt. Miles") and Corley Lovett ("Sgt. Lovett") were at a Citgo gas station to

conduct an ABO vice check.[1]  Prior to entering the store, they noticed the

defendant limping as he walked into the Citgo.[2]  Sgt. Miles observed a

silhouette of a rifle in the defendant's right pant leg but could not see any

part of the rifle.  However, Sgt. Lovett saw the silhouette of the rifle and its

brown handle sticking out of the defendant's pants.  As the defendant exited

the Citgo, Sgt. Miles observed the brown handle of the rifle sticking out of

the defendant's pants as he adjusted his clothes.  At this time, the sergeants

believed that the defendant was carrying the weapon in a concealed manner

and speculated that he may have just robbed the Citgo.  Fearing that a

shootout could occur and wanting to avoid endangering innocent bystanders,

the sergeants declined to approach the defendant, opting instead to radio a

marked patrol unit to conduct a traffic stop.

While the sergeants were waiting for a patrol unit to arrive, the

defendant drove away from the Citgo premises, and the sergeants decided to

follow him.  The defendant's next stop was Consumer's Liquor (a local

liquor store), where he exited his vehicle and entered the store. The

sergeants arrived shortly thereafter.  Believing that another robbery may

about to occur, the sergeants donned their bulletproof vests, entered the

liquor store, and made contact with the defendant.[3]  Sgt. Miles drew his

weapon, identified himself, and put the defendant in handcuffs.  They then

---

[1] Persons employed by businesses that sell or serve alcoholic beverages in Shreveport, Louisiana must obtain an Alcoholic Beverage Ordinance (ABO) card.  The Shreveport Police Department conducts random checks of businesses that sell alcohol to ensure compliance with this ordinance.

[2] Sgt. Miles and Sgt. Lovett were dressed in plain clothes and in an unmarked police vehicle.

[3] Sgt. Miles testified that they did not put on their body cameras because they were located in the back of their vehicle and they did not have time to put them on.

escorted the defendant back outside to his car, and Sgt. Miles *Mirandized* him.

As the sergeants walked around the defendant's car, they saw the rifle they previously observed in plain view on the rear floorboard next to a backpack. According to Sgt. Miles, the defendant gave him oral consent to search his vehicle. Sgt. Lovett testified that he did not hear the defendant give consent as he was the "backup officer" and was merely supervising Sgt. Miles before he made his current rank. During the search, they recovered an AK-47 assault rifle with one round in the chamber and a 30-round banana clip. Inside the backpack, they found approximately 1/3 of a pound of marijuana, a Glock magazine loaded with 17 rounds, a digital scale, and packing materials.[4]

Consequently, they arrested the defendant for possession with intent to distribute a CDS and illegal carrying of a weapon while in possession of a CDS. Suspecting that the defendant had provided them with a fake name, the sergeants used Thinkstream (a system used to verify a person's true identity) and learned that the defendant was a felon. As a result, they added possession of a firearm by a convicted felon to his charges. Sgt. Miles' police report stated that "both agents observed a light skin black male walking up to the business (Citgo) with a brown handled rifle stuffed inside his pants."

On May 17, 2022, the State filed a bill of information charging the defendant with possession with intent to distribute marijuana in an amount less than 2½ pounds, in violation of La. R.S. 40:966(A)(1) & (B)(2)(a), and

---

[4] The sergeants never located a Glock firearm.

3

possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1.  On November 2, 2022, the bill of information was amended to add count three, illegal carrying of weapons while in possession of a CDS, in violation of La. R.S. 14:95(E).

On October 26, 2022, the defendant filed a motion to suppress, arguing that (1) the sergeants lacked probable cause to arrest him; (2) the search and seizure was unreasonable, unconstitutional, and in violation of La. C. Cr. P. art. 215.1; and (3) he did not give the sergeants consent to search his vehicle.  On November 25, 2022, a hearing was held on the motion to suppress, and Sgt. Miles testified to the aforementioned facts.  During the hearing, defense counsel argued that Sgt. Miles' testimony differs from what was written in his police report.  Defense counsel noted that in his report, Sgt. Miles wrote that he could see the brown handle of the rifle as the defendant walked inside the Citgo.  However, during the hearing on the motion to suppress, he stated that he could only see the handle of the gun when the defendant exited the Citgo.  To this point, defense counsel argued that the weapon was not concealed and, therefore, the defendant was not in violation of the statute and was not committing a crime.  The trial court denied the defendant's motion to suppress and relied on Sgt. Miles' testimony that the rifle was, in fact, concealed.[5]  The defendant applied for a supervisory writ on the motion to suppress, which this Court denied in a two-to-one ruling on December 12, 2022.

---

[5] At the suppression hearing, the only specific issue raised and argued by defense counsel was whether the rifle was concealed.  The trial judge did not address the issue of whether the defendant consented to the search or make findings of fact as to his consent.

On December 13, 2022, a jury trial ensued and Sgts. Miles and Lovett testified to the aforementioned facts.[6] Chris Walker, a supervisor with the Louisiana Office of Probation and Parole, testified that the defendant had two prior felony offenses and that either offense would prevent him from lawfully possessing a firearm. DeAndria Moss, a forensic analyst with the North Louisiana Crime Lab, testified that evidence submitted in this case was roughly 1/3 of a pound of marijuana.

At the conclusion of the trial, the jury returned a responsive verdict and found the defendant guilty of possession of schedule I, CDS, more than 14 grams but less than 2½ pounds in violation of La. R.S. 90:966(C)(2)(b) (Count 1), for which he received a sentence of 2 days in the parish jail. The jury also found the defendant guilty as charged for possession of a firearm or carrying a concealed weapon by a convicted felon in violation of La. R.S. 14:95.1 (Count 2), for which he received 10 years at hard labor without parole, probation or suspension of sentence and a $1,000 fine, and illegal carrying of weapons while in possession of a CDS in violation of La. R.S. 14:95(E) (Count 3), for which he received 7 years at hard labor without parole, probation or suspension of sentence. The trial court ordered the sentences to run concurrently.

**DISCUSSION**

*Illegal stop, detention, and arrest*

In his first assignment of error, the defendant argues that he was illegally stopped, detained, and arrested for carrying a concealed weapon

---

[6] At trial, defense counsel did not object to Sgt. Miles' testimony regarding obtaining consent from the defendant, nor did they present any evidence to show that the defendant did not consent to the search of his vehicle.

despite the fact that the rifle was never concealed. He asserts that at the suppression hearing, Sgt. Miles' testimony contradicted his police report as to whether the rifle was concealed when he entered the Citgo. Furthermore, he points out that Sgt. Lovett's testimony at trial is consistent with the police report in that the handle of the rifle could be seen before and after the defendant exited the Citgo. In support of his argument, the defendant cites *State v. Fluker*, 311 So. 2d 863 (La. 1975), which states that "the appropriate test to be applied in prosecutions for illegal carrying of weapons is whether, under the facts and circumstances of the case as disclosed by the evidence, the manner in which defendant carried the weapon evinced an intent to conceal its identity." He maintains that the rifle was not concealed because the handle was visible, and therefore, he was not observably breaking the law when he was stopped. The defendant also acknowledges that state and federal jurisprudence authorizes law enforcement to conduct investigatory stops and interrogate a person who is reasonably suspected of criminal activity. However, he asserts that, in this case, there was nothing to establish that a crime was about to occur, was occurring, or had occurred to justify the stop and detention. For these reasons, he believes the evidence should be suppressed.

The State contends that the sergeants had reasonable suspicion to approach the defendant because he was carrying a rifle in his right pant leg in an area with frequent robberies. The State points out that the defendant had to repeatedly adjust his pants due to the manner in which he was carrying the rifle in order to keep it concealed. The State concedes that the sergeants did not directly observe the defendant committing any crime prior to making contact, but argues that officers do not have to observe what they

know to be criminal behavior before investigating. The State notes that while the sergeants were not aware at the time, the defendant was, in fact, committing a crime because he is a felon and he was in possession of a firearm. Thus, according to the State, the defendant behaved in a manner consistent with the sergeants' experience and training, which gave rise to an articulated reasonable suspicion that he had possibly committed a robbery and was armed.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV. *See also*, La. Const. art. I, § 5. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by both state and federal law. *See*, La. C. Cr. P. art. 215.1; *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Boyle*, 34,686 (La. App. 2 Cir. 09/17/01), 793 So.2d 1281. The standard required for an investigative detention is the "reasonable suspicion of criminal activity" standard articulated in *Terry v. Ohio*, *supra*, and *State v. Boyle*, *supra*. The United States Supreme Court has held that courts reviewing the legality of an investigatory stop must consider the totality of the circumstances of each case to see whether the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). Courts must also give deference to the inferences and deductions of a trained police officer. *State v. Huntley*, 97-0965 (La. 03/13/98), 708 So.2d 1048.

When applying the totality of the circumstances test, the Supreme Court considers several factors particularly relevant, including the location

7

and time of the stop, as well as the defendant's actions preceding the stop. Although an individual's presence in a "high-crime area" alone is insufficient to support a reasonable suspicion of criminal activity, the Supreme Court has held that a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation. *Illinois v. Wardlow*, 528 U.S. 119, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

In reviewing the correctness of the trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. An appellate court reviews the trial court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying de novo review to findings of law. The appellate court defers to the trial court's factual findings unless they are not adequately supported by reliable evidence. *State v. Jordan*, 50,002 (La. App. 2 Cir. 08/12/15), 174 So. 3d 1259, *writ denied*, 15-1703 (La. 10/10/16), 207 So. 3d 408.

In the matter *sub judice*, the defendant's argument turns on the reasonableness of the *Terry* stop, specifically, whether or not the sergeants had the requisite reasonable suspicion necessary to justify the stop. We find that their testimony provided sufficient facts to justify the stop.

Sgt. Miles stated that based on his experience in narcotics and interacting with people who try to hide their weapons in their clothes, the defendant's gestures – limping and adjusting his clothes to have a steady hold of the rifle – demonstrated that he was attempting to conceal an assault rifle in his right pant leg. Additionally, Sgt. Lovett also observed the

defendant attempting to walk and hold the firearm in his pant leg.[7] Sgt. Lovett testified that an individual walking into a gas station or a liquor store with an assault rifle is alarming. Adding to the totality of the circumstances, Sgt. Miles and Sgt. Lovett testified that several robberies had occurred in the area and that they believed the defendant was going to rob the Citgo. Additionally, Sgt. Miles testified that the Citgo was located at a very busy intersection, and several people were pumping gas. They also testified to safety concerns for themselves and others, which influenced their decision not to make contact with the defendant at the Citgo. As presented through their trial testimony, they decided to make contact with the defendant at Consumer's Liquor in fear that he may be committing a second robbery. Considering the odd manner in which the defendant was carrying the assault rifle, recent robberies in the area, and that the defendant was possibly committing robberies, the sergeants had information sufficient to form reasonable suspicion for an investigative stop and detention.

Lastly, the defendant argues that he was arrested without probable cause for illegal carrying of a concealed weapon because the rifle was never concealed. He asserts that he was placed under arrest when he was handcuffed inside the Consumer's liquor because he was not free to leave. We disagree.

The use of handcuffs does not necessarily elevate a detention to an arrest. *State v. Turner*, 12-855 (La. App. 5 Cir. 05/16/13), 118 So. 3d 1186. To show that an investigatory detention involving the use of handcuffs did not exceed the limits of a *Terry* stop, the state must show some fact or

---

[7] Sgt. Lovett testified that the defendant had to hold his leg to keep the firearm from falling because it was pulling on his pants.

9

circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing the law enforcement officers, the public, or the suspect himself to an undue risk of harm. *State v. Reaux*, 14-215 (La. App. 5 Cir. 11/25/14), 165 So. 3d 944, 960, *writ denied*, 14-2639 (La. 10/09/15), 178 So. 3d 1000.

Both Sgt. Miles and Sgt. Lovett testified that they had concerns for their safety and the safety of others at the two locations due to the defendant being armed with an assault rifle. Specifically, Sgt. Miles testified that even with their protective vests on, a bullet from an assault rifle would likely kill them. Thus, we find that the State proved that the officers were justified in cuffing the defendant during the investigatory detention and that he was not under arrest at that time.

Probable cause to arrest an individual exists when reasonable and trustworthy facts known to the officer cause him to believe that the individual has committed an offense. *State v. Surtain*, 09-1835 (La. 03/16/10), 31 So. 3d 1037. The sergeants testified that the defendant was not placed under arrest until a search of his vehicle, after obtaining his consent, yielded an AK-47 assault rifle, a loaded Glock magazine, and a backpack containing marijuana along with packing materials. The defendant was also the only person in the vehicle, and the keys were in his possession. The sergeants also discovered that the defendant was a felon after running his name through a database. Thus, there existed reasonable and trustworthy facts to support a finding of probable cause to arrest the defendant for possession with intent to distribute a CDS, illegal carrying of a weapon

10

while in possession of a CDS, and possession of a firearm by a convicted felon.  Accordingly, this assignment of error lacks merit.

***Illegal search of the vehicle***

In his second assignment of error, the defendant argues he did not give Sgt. Miles consent to search his vehicle, and that any reliance upon Sgt. Miles' testimony regarding consent to search should not be believed.  In support of this claim, the defendant notes that Sgt. Miles stated at the motion to suppress hearing and at trial that the defendant never made any statements.  Furthermore, he asserts that Sgt. Miles' police report stated that when being detained, he was unarmed and did not know what he was detained for.  The defendant contends that both statements cannot be true and that Sgt. Miles either did not tell the truth during his testimony or fabricated his police report.  To that point, the defendant claims that the only proof that he consented to the search was the testimony of Sgt. Miles, whose word cannot be trusted.  Thus, the defendant requests that this court suppress the evidence because of Sgt. Miles' lack of credibility.

It is well settled that a warrantless search conducted pursuant to valid consent is permitted by the Louisiana and United States Constitutions.  *State v. Freeman*, 50,282 (La. App. 2 Cir. 04/13/16), 194 So. 3d 1, *writ denied*, 16-0927 (La. 5/1/17), 220 So. 3d 734; *State v. Raheem*, 464 So. 2d 293 (La. 1985); *State v. Crews*, 28,153 (La. App. 2 Cir. 5/8/96), 674 So. 2d 1082.  Oral consent to a search is valid.  *State v. Crews*, *supra*.  However, consent to a search must be given freely and voluntarily, and the burden of proof on this issue rests upon the State.  *State v. Ossey*, 446 So. 2d 280 (La. 1984), *cert. denied*, 469 U.S. 916, 105 S. Ct. 293, 83 L. Ed. 2d 228 (1984);  *State v. Haygood*, 26,102 (La. App. 2 Cir. 8/17/94), 641 So. 2d 1074, *writ denied*,

94-2373 (La. 1/13/95), 648 So. 2d 1337. When reviewing a trial court's ruling on a motion to suppress, based on findings of fact, great weight is placed upon the trial court's determination because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. *State v. Jackson*, 26,138 (La. App. 2 Cir. 8/17/94), 641 So. 2d 1081. Appellate courts will not set a credibility determination aside unless it is clearly contrary to the record evidence. *State v. Payne*, 01-3196 (La. 12/04/02), 833 So. 2d 927. In reviewing the correctness of the trial court's pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. *State v. Jordan*, *supra*.

At the motion to suppress hearing, the only specific issue raised and argued by defense counsel was the issue of concealment of the firearm. The other issues outlined in defense counsel's written motion to suppress were not articulated at the suppression hearing. One of those issues was whether or not the defendant consented to the search of his vehicle. The trial court is entitled to great weight in determining whether there was consent to a search; however, the trial court did not explicitly make such a determination at the suppression hearing. Even so, the trial court ultimately denied the defendant's motion to suppress. Implicit in this denial is the finding that the defendant's consent was voluntary. In addition, Sgt. Miles testified at the suppression hearing and trial that the defendant gave him consent to search his vehicle post-*Miranda*. The police report also notes that the defendant permitted the sergeants to look inside his vehicle. This court will not second guess findings of fact supported by the record. The search conducted by the sergeants was permissible as a search pursuant to consent. Thus, the trial

12

court did not err in denying the motion to suppress the evidence. This assignment of error is without merit.

### *Illegal search of the backpack*

In his third assignment of error, the defendant argues that even if this court determines Sgt. Miles to be a credible witness, the marijuana should still be suppressed because the search of his backpack exceeded the scope of the defendant's consent. In support of this argument, the defendant refers to *Florida v. Jimeno*, 500 U.S. 248, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991), in which the Supreme Court held that when officers rely upon consent to justify a warrantless search, they have no more authority than they have been given by the consent. He asserts that he did not give Sgt. Miles permission to look inside his backpack. Therefore, the search of his backpack was illegal, and the evidence resulting from it should be suppressed.

Once voluntary consent is given, it continues until it is revoked or withdrawn. As held by the Supreme Court in *Florida v. Jimeno*, *supra*, when officers rely upon consent to justify a warrantless search, they are not required to separately request permission to search individual containers within a vehicle for which they have received consent to search.

In this case, the defendant granted Sgt. Miles permission to search his vehicle, and he did not place any explicit limitations on the scope of the search. Thus, once Sgt. Miles was granted consent to search the defendant's vehicle he did not need separate permission to search his backpack. Therefore, this assignment of error is without merit.

### *Errors Patent*

In accordance with La. C. Cr. P art. 920, all appeals are reviewed by this court for errors patent on the face of the record. Generally, when there

is a discrepancy between the minutes and the transcript, the transcript must prevail. *State v. Lynch*, 441 So. 2d 732 (La. 1983). When sentencing the defendant, the trial court imposed sentences for Count 1, Count 3, and then Count 2. As a result, the sentences were inputted incorrectly for Count 2 and Count 3, and the sentences were transposed on the two charges. The minutes for illegal carrying of a weapon while in possession of a CDS incorrectly reflect a 10-year sentence and a $1,000 fine. The minutes for possession of a firearm by a convicted felon incorrectly reflect a 7-year sentence. The trial court is instructed to correct this error in the minutes, as the transcript controls over the minutes when there is a conflict. To limit any further confusion, we recommend that the trial court adhere as closely as possible to the language in the statute when referring to the name of the crime during sentencing.

## CONCLUSION

For the reasons stated above, the convictions and sentences of the defendant are affirmed. The trial court is ordered to have the minutes of the court corrected to accurately reflect the correct sentences for Count 2 and Count 3.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**